Geraldine **BOYKAI**, Appellee,

v.

Ted **YOUNG**, Appellant.

Superior Court of Pennsylvania.

Submitted Nov. 4, 2013.
Filed Jan. 7, 2014.

Sandra W. Morris, Trevose, for appellant.

Barbara Kaner, Doylestown, for appellee.

BEFORE: BENDER, P.J., OTT, J., and STRASSBURGER, J.*

OPINION BY BENDER, P.J.:

Ted Young ("Appellant" or "Husband") appeals from the protection from abuse (PFA) order entered on March 20, 2013, which provided for the protection of Geraldine Boykai ("Appellee" or "Wife") for a period of one year. On appeal, Husband asserts that the trial court erred as a matter of law in concluding that the evidence established "abuse" under the Protection From Abuse Act, 23 Pa.C.S. § 6101, *et seq.* We affirm.

The trial court provided the following procedural and factual history:

> Both parties are originally from Liberia, Africa. Wife . . . came to the United States in 2004. Husband . . . came in 2005. The parties met in November, 2010 and moved in together. After Wife became pregnant, the parties married on November 8, 2011. Their child, [T.], was born [in April of 2012].
>
> Wife filed a [petition for a] PFA [order] on January 29, 2013. On February 6, 2013, the Honorable Alan Rubenstein entered a temporary order and continued the case. On February 27, 2013, the undersigned continued the matter, entered a temporary order, and the parties reached a custody agreement. On March 20, 2013, the undersigned conducted a hearing. Wife's principal allegation was that Husband forced her on numerous occasions to have sex against her will.
>
> *     *     *
>
> Wife testified that Husband only began to force himself on her if she declined after the parties were married. This included the time when she was very pregnant. She testified in some detail how he physically would overpower her. She stated he wanted intercourse three times a day, seven days a week. She stated it hurt at times. After the baby was born in April, 2012, the obstetrician told Wife not to have relations with her Husband for six weeks, but Husband still insisted at least once. Then, after the six weeks were up, Husband resumed his frequent daily demands.
>
> Finally, Wife began to oppose Husband's actions. Husband became very angry and stopped giving Wife money for herself and the child. Husband still tried to force himself on her.
>
> *     *     *
>
> Husband claimed he never forced himself on his wife. Husband claimed that he did not have any relations with his Wife after the baby was born because he was very happy with his child. But then[,] in response to his lawyer's continued questioning, [Husband] revised his testimony to state he only had sex with his wife when they both agreed. However, he did say that he told his Wife "it is only sex[,]" implying that they were having a disagreement. (N.T., 3/20/13 p. 93).
>
> Husband produced a witness, a neighbor, who inadvertently corroborated Wife's testimony on the core issue of forcing sex. On cross, she stated that when she asked Wife "How are you and Ted," on several occasions Wife responded "Ted likes too much sex[."] (N.T., 3/20/13 p. 137). She testified that Wife told her this when the baby was two or three months old.

* Retired Senior Judge assigned to the Superior Court.

Trial Court Opinion (T.C.O.), 6/18/13, at 1–4 (some citations to notes of testimony omitted).

The court entered a PFA order on March 20, 2013, which it summarized as follows:

At the conclusion of the hearing, we entered a PFA Order in favor of Wife. The Order stated that Husband shall not abuse, stalk, harass, threaten or attempt to use physical force against Wife. It excluded Husband from the marital residence, prohibited Husband from having any contact with Wife, and proscribed him from possessing, transferring, or acquiring firearms for the duration of the order. The PFA Order is for one year; [i]t will expire on March 19, 2014.

T.C.O. at 2. Husband timely appealed.

On appeal, Husband raises one issue for our review:

Whether the Lower Court erred when it entered an Order under the Protection From Abuse Act against [Husband] where [Wife] failed to establish that she sustained "abuse" as that term is defined in the Act and, as a collateral question, whether this issue has not been waived where it was raised in [Husband's] Statement of Matters Complained of on Appeal and was not so vague or overbroad as to leave the Lower Court guessing at the exact argument raised on appeal?

Appellant's Brief at 12.[1]

"Our standard of review for PFA orders is well settled. 'In the context of a PFA order, we review the trial court's legal conclusions for an error of law or abuse of

discretion.'" *Stamus v. Dutcavich,* 938 A.2d 1098, 1100 (Pa.Super.2007) (citations omitted).

Section 6102 of the Protection From Abuse Act provides the following definition of "abuse":

"**Abuse.**" The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:

(1) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury, serious bodily injury, rape, involuntary deviate sexual intercourse, sexual assault, statutory sexual assault, aggravated indecent assault, indecent assault or incest with or without a deadly weapon.

23 Pa.C.S. § 6102.

In the instant case, Husband's sexual assaults began after the parties were married in 2011 and continued at least until the filing of the PFA petition in early 2013. During this time, Wife did not report the assaults to police or doctors. In January of 2013, Wife sought to file for child and spousal support in Bucks County. At that time, she told a filing clerk that she needed protection from her husband, and she was referred to Legal Aid of Southeastern Pennsylvania. Subsequently, Wife petitioned for a PFA order, based on Husband's assaults. In March of 2013, the trial court held a hearing on the petition. At the hearing, when asked why she did not report the assaults to police or doctors, she testified, verbatim:

---

1. The trial court, in its opinion pursuant to Pa.R.A.P. 1925(a), suggests that the substantive issue was waived as unduly vague. *See* T.C.O. at 2 (citing *Commonwealth v. Dowling,* 778 A.2d 683, 686 (Pa.Super.2001) ("[A] Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all.")). In our view, the trial court was sufficiently informed so as to capably identify and address the issue in its opinion. Accordingly, we decline to deem this issue waived.

I never thought that you can call the police that your husband rape you. Because we're from Africa—I'm sorry for me bringing in another topic—Africa is like—he is trying to bring Africa rules in America. Like wives are slaves to men in Africa. So he was trying to bring that on me.

N.T., 3/20/13, at 54.[2]

Over the past thirty years, our Legislature has endeavored to modernize Pennsylvania's sexual offenses statute. *See generally* Dan M. Kahan, *Culture, Cognition, and Consent: Who Perceives What, and Why, in Acquaintance–Rape Cases,* 158 U. PA. L.REV. 729, 742–44 (2010) (discussing developments in the modernization of rape laws in Pennsylvania). In addition to the repeal of the marital rape exemption in the 1980s, the Legislature has amended the definition of the "forcible compulsion" element of rape. While the crime previously required a showing of physical force, today, intellectual, moral, emotional, or psychological force all suffice to establish "forcible compulsion."[3] Additionally, the Legislature codified a new offense, the crime of "sexual assault," which assigns culpability for sexual intercourse that occurs without the victim's consent, thereby precluding any need for a showing of force to establish that offense.[4] Still, some anticipate continuing legislative reform in the future. *See generally* Susan Estrich, *Rape,* 95 YALE L.J. 1087, 1182–83 (1986) (arguing against terming non-consensual sex as less than "rape," *e.g.* "sexual assault," and acknowledging that rape involving serious bodily injury merits aggravated treatment).

■ Turning to the case before us, Husband's argument implicates the trial court's use of the word "rape" in characterizing its finding of abuse. He argues that without physical force, there can be no finding of abuse under the PFA Act. Additionally, he contends that Wife's use of the word "force" in her testimony stems from her "good, yet limited, grasp of the English language." Appellant's Brief at 21. Specifically, he observes,

The record reflects that Husband never struck her and, indeed, it appears as if she rather easily warded him off when she wished to. When she didn't want to

2. Although Wife attributes Husband's actions to their shared foreign culture, Pennsylvania, too, permitted these types of rapes less than thirty years ago. *See generally* Abigail Andrews Tierney, Comment, *Spousal Sexual Assault: Pennsylvania's Place on the Sliding Scale of Protection from Marital Rape,* 90 DICK. L.REV. 777, 793–94 (1986). Then–Governor Richard Thornburgh described rapes that occur within marital homes as something less than "real" rape, and vetoed at least one attempt to repeal Pennsylvania's marital rape exemption. *Id.* Ultimately, the Legislature repealed the marital rape exemption in Pennsylvania.

3. Section 3121 provides, in pertinent part:
   § 3121. Rape
   (a) Offense defined.—A person commits a felony of the first degree when the person engages in sexual intercourse with a complainant:

(1) By forcible compulsion.
18 Pa.C.S. § 3121. Section 3103 provides the following definition of forcible compulsion. Notably, force is not limited to physical violence:
   "Forcible compulsion." Compulsion by use of physical, intellectual, moral, emotional or psychological force, either express or implied. The term includes, but is not limited to, compulsion resulting in another person's death, whether the death occurred before, during or after sexual intercourse. 18 Pa.C.S. § 3101.

4. Section 3124.1, Sexual Assault, provides as follows: "[A] person commits a felony of the second degree when that person engages in sexual intercourse or deviate sexual intercourse with a complainant without the complainant's consent." 18 Pa.C.S. § 3124.1.

engage in sexual relations, she simply pushed him away.

\* \* \*

When Wife used the word "force" she was talking about something very different from the kind of physical coercion contemplated by the Lower Court. "Force" to her was Husband's purported refusal to support her if she did not agree to sexual relations.

\* \* \*

Exchanging sex for support, while unseemly, is not "force" and, consequently, is not "abuse" as that term is used in the PFA [Act].

Appellant's Brief at 21–23 (citations to notes of testimony omitted).[5]

Appellant misinterprets the meaning of the word "force" in the context of rape in Pennsylvania. To the extent that the trial court concluded that Husband abused Wife by means of exchanging sex for financial support, such compulsion amounts to intellectual or psychological force, thus establishing the elements of forcible rape. *See* 18 Pa.C.S. §§ 3101, 3121; *see, e.g., Commonwealth v. Eckrote,* 12 A.3d 383, 387 (Pa.Super.2010) (threatening suicide amounted to psychological force, which established "forcible compulsion" element of rape).

■ Moreover, despite Husband's assertions, "force" is not required to establish "abuse" under the PFA Act. Here, the trial court's conclusion that the facts at issue establish "abuse" under the PFA Act was based on its determination that "Husband's conduct rose to the level of marital

rape *or* sexual assault." T.C.O. at 4 (emphasis added). Even if it were not the case that Husband's actions amounted to forcible rape, the testimony adduced at the hearing also supports the conclusion that Husband engaged in sexual intercourse with Wife without Wife's consent, *i.e.,* the crime of sexual assault, which, like all forms of rape, constitutes "abuse" under the PFA Act. *See* 23 Pa.C.S. § 6102.

As a practical matter, the relevant question is whether the alleged victim consented to sexual intercourse. To that end, the PFA Act supports a finding of abuse regardless of whether the sexual intercourse at issue is the result of forcible compulsion, or is simply non-consensual. *See* 23 Pa. C.S. § 6102. Accordingly, we find no error of law or abuse of discretion in the trial court's conclusion that Husband abused Wife, and we affirm the trial court's order.

Order affirmed.

Judge OTT concurs in the result.

---

**5.** Although the trial court made no specific finding as to what "support" Husband withheld, Wife testified as follows, verbatim: "That's when he start punishing me because he—he stopped feeding me. He stopped supporting me. He stopped paying my bills. Because he wanted to have sex seven days a week and I said, no, three days a week and he said no. Because he say he the breadwinner in the family and that he stopped supporting the home." N.T., 3/20/13, at 24. Wife also testified that Husband would not permit her to seek work. *Id.* at 24–25. The trial court found Wife's testimony credible. T.C.O. at 3.