J-S18003-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| Z.R.V. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| E.S. | |
| Appellant | No. 1789 EDA 2016 |

Appeal from the Order Entered May 11, 2016
In the Court of Common Pleas of Lehigh County
Civil Division at No(s): No. 2015-PF-1045

BEFORE:  PANELLA, J., SOLANO, J., and FITZGERALD, J.[*]

MEMORANDUM BY PANELLA, J.                    **FILED APRIL 17, 2017**

Appellant, E.S., appeals from the final order entered pursuant to Appellee, Z.R.V.'s petition under the Protection From Abuse Act ("PFA"), 23 Pa.C.S.A. § 6101, *et seq*. E.S. challenges the sufficiency of the evidence supporting the PFA court's findings contained in the order, as well as the weight of the evidence. We conclude that there was sufficient evidence of record to support the PFA court's finding that E.S. had engaged in a course of unauthorized conduct that caused Z.R.V. to reasonably fear for her safety. We therefore affirm.

The hearings on Z.R.V.'s petition provided the following evidence.[1] E.S. and Z.R.V. were romantic partners for slightly more than six months

_____

[*] Former Justice specially assigned to the Superior Court.

and lived together for approximately four of those months. Shortly after their co-habitation ended, Z.R.V. expressed her desire to end the romantic relationship. E.S. did not share this desire, and according to Z.R.V., told her that he would not let her be happy with anybody else.

In the following weeks, the parties continued to discuss the status of their relationship, culminating in an argument in which, according to Z.R.V., E.S. threw her to the floor and pinned her down by grabbing her throat. Z.R.V. asserted that she did not file a PFA petition immediately because she was not confident she could follow through by testifying in open court.

The parties continued to discuss their relationship goals, with Z.R.V. repeatedly, if inconsistently, indicating that she had no desire to continue it. E.S. continued communicating his desire to maintain the relationship, often displaying a loss of temper.

Approximately one month after the alleged choking incident, E.S. sent the following text message to Z.R.V.

> Right, care to share what happened last night? Just remember that I know everything and where you [were], just because [you] turned off [your] location services and even changed [your] PW doesn't mean that I don't know where [you are] at all times. Still ping [your] number and still have a tracker on the

(Footnote Continued) ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

[1] After hearing from both parties *pro se* at the initial hearing, the PFA court granted the final PFA order. However, it subsequently granted E.S.'s motion for reconsideration, and allowed the parties an opportunity to present further evidence at a second hearing where both parties were represented by counsel.

car. So be honest with me which it's simple and all that I ask from you!

Z.R.V. did not respond to this disturbing text message, and on several occasions informed E.S. that she did not want him to come to her home.

This did not stop E.S. from continuing to text Z.R.V., and on several occasions, force her to interact with him in person. Z.R.V. testified that she felt that E.S. did not understand the word, "no," and that she was trying to let him down easily. As a result, she began responding to his texts more regularly.

In the month leading up the filing of the PFA petition, Z.R.V. testified that E.S. began showing up at her home after 2 a.m. He would knock on her door until he got tired of waiting outside. Several times, she received complaints from neighbors regarding these visits. Z.R.V. began letting E.S. into her home and talking to him in an effort to spare her neighbors, and due to her fear that she could get evicted due to E.S.'s actions.

After the last time E.S. made an early morning visit, Z.R.V. reconsidered her decision not to file a PFA petition. In ultimately granting Z.R.V.'s petition, the trial court entered an order with nine pages of factual findings and 13 pages of legal discussion.

On appeal, E.S. raises challenges to the sufficiency of the evidence supporting seven of the trial court's findings. "In the context of a PFA order, we review the trial court's legal conclusions for an error of law or abuse of discretion." ***Boykai v. Young***, 83 A.3d 1043, 1045 (Pa. Super. 2014)

(citation and internal quotation marks omitted). We review the evidence of record in the light most favorable to, and grant all reasonable inferences to, the party that prevailed before the PFA court. **See Snyder v. Snyder**, 629 A.2d 977, 982 (Pa. Super. 1993).

The petitioner need only establish her case by a preponderance of the evidence to be entitled to relief. **See Custer v. Cochran**, 933 A.2d 1050, 1058 (Pa. Super. 2007). The preponderance of the evidence standard is "defined as the greater weight of the evidence, i.e., to tip a scale slightly is the criteria or requirement for preponderance of the evidence." **Raker v. Raker**, 847 A.2d 720, 724 (Pa. Super. 2004) (citation omitted).

> Furthermore, we must defer to the credibility determinations of the trial court. Finally, we note that a PFA petitioner is not required to file a police report, nor is it necessary for her to introduce medical evidence of an injury. The petitioner's testimony is sufficient if it is believed by the trial court.

**Custer**, 933 A.2d at 1058. (internal citations omitted).

The PFA Act defines "abuse" as follows:

> The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:
>
> (1) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury, serious bodily injury, rape, involuntary deviate sexual intercourse, sexual assault, statutory sexual assault, aggravated indecent assault, indecent assault or incest with or without a deadly weapon.
>
> (2) Placing another in reasonable fear of imminent serious bodily injury.
>
> (3) The infliction of false imprisonment pursuant to 18 Pa.C.S. § 2903 (relating to false imprisonment).

(4) Physically or sexually abusing minor children, including such terms as defined in Chapter 63 (relating to child protective services).

(5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury. The definition of this paragraph applies only to proceedings commenced under this title and is inapplicable to any criminal prosecutions commenced under Title 18 (relating to crimes and offenses).

23 Pa.C.S.A. § 6102.

The PFA court made findings that supported the grant of PFA protection pursuant to subsections (1), (2), (3), and (5). E.S. has challenged each of these findings, but we need only find that the PFA court's decision was correct under subsection (5) to affirm the order, regardless of any other factual findings.[2] ***See Mescanti v. Mescanti***, 956 A.2d 1017, 1023 (Pa. Super. 2008).

Here, the PFA court found only the testimony of Z.R.V. credible. After reviewing the record and the transcripts, we can find no reason to disturb the PFA court's significant discretion on this issue.

Z.R.V. testified that E.S. threatened that he would never let her be happy with anyone else. ***See*** N.T., PFA Hearing, 10/8/15, at 9. Subsequently, during an argument with Z.R.V., E.S. threw her to the floor and pinned her down by her throat. ***See id***., at 5, 7. After this incident, E.S.

_____

[2] E.S. has not challenged Z.R.V.'s standing under the PFA.

continued to contact Z.R.V., despite her desire to be left alone. In one text message, E.S. indicated that he could track her location through her phone and her car. *See id*., at 7-10, 28. Another indicated that he was aware that she had blocked him from contacting her phone, but threatened that he could still find ways to get in touch with her. *See id*., at 39.

Z.R.V. also testified to various other actions taken by E.S. in an effort to manipulate her to see him. These activities culminated in E.S. appearing at her home in the middle of the night at least five times over the course of a month. *See id*., at 4-5, 38-39.

This evidence is sufficient to support the PFA court's finding that E.S. was "very demanding and controlling toward Plaintiff …, that he exercised control over Plaintiff to such a degree that she believed that she could not extract herself from the relationship with him without getting physically hurt, and she tried to get out of the relationship slowly[.]" Furthermore, we agree with the PFA court's conclusion that these actions qualify as "abuse" under subsection (5) of the PFA.

E.S. faults the PFA court's discussion of the term "serious bodily injury." *See* Appellant's Brief, at 26-27. However, this finding was not necessary to the PFA court's finding under subsection (5). It is therefore irrelevant to our decision. *See Mescanti*.

E.S. engages in speculation that the PFA court "seems to suggest that the Defendant was stalking the Plaintiff." Appellant's Brief, at 28. Whether or

not the PFA court was actually suggesting any such thing, it does not affect our determination that the PFA court's explicit findings are supported by the record and are sufficient to establish relief under subsection (5).

In his remaining issue on appeal, E.S. challenges the weight of the evidence supporting the PFA court's order granting Z.R.V. protection under the PFA. He contends that the PFA court abused its discretion in failing to consider the evidence that Z.R.V. continued to contact him by text message in the month prior to filing the PFA petition, going so far as to request that he buy her food and bring it to her. However, this evidence, which Z.R.V. did not contest, does not negate the PFA court's findings.

The PFA court found that E.S. engaged in manipulative conduct that pressured Z.R.V. into continuing to communicate with him due to a eminently reasonable fear of bodily injury. The court found credible Z.R.V.'s testimony that she was attempting to let E.S. down easy from the relationship due to his insistence on maintaining the relationship. Thus, rather than undercut the PFA court's conclusions, the fact that Z.R.V. continued to communicate with E.S. after initially attempting to block all communication with him supports it. We therefore find no merit in E.S.'s final issue on appeal.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/17/2017