J-S18007-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| LESLEY A. GEYER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KILEY AUSTIN-YOUNG | : | |
| | : | |
| Appellant | : | No. 1133 MDA 2021 |

Appeal from the Order Entered July 22, 2021
In the Court of Common Pleas of Luzerne County Civil Division at No(s):
2021-07000

| | | |
|---|---|---|
| JOHN A. GEYER, JR. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KILEY AUSTIN-YOUNG | : | |
| | : | |
| Appellant | : | No. 1134 MDA 2021 |

Appeal from the Order Entered July 22, 2021
In the Court of Common Pleas of Luzerne County Civil Division at No(s):
202107061

| | | |
|---|---|---|
| DEVON AUSTIN-GEYER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KILEY AUSTIN-YOUNG | : | |
| | : | |
| Appellant | : | No. 1135 MDA 2021 |

Appeal from the Order Entered July 22, 2021
In the Court of Common Pleas of Luzerne County Civil Division at No(s):
2021-07062

BEFORE:  BENDER, P.J.E., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY BENDER, P.J.E.:               **FILED: JULY 8, 2022**

In these three cases, which this Court *sua sponte* consolidated, Appellant, Kiley Austin-Young, challenges orders entered against him under the Protection from Abuse (PFA) Act, 23 Pa.C.S. §§ 6101-6122. Those orders prohibit Appellant from contacting three of his family members — Lesley Geyer, John Geyer, and Devon Geyer — for a period of one year. Appellant contends that the trial court abused its discretion by entering the orders based on insufficient evidence and its application of an incorrect burden of proof. After careful review, we affirm.

We glean the following facts and procedural history from the certified record in this case. On July 13th and 15th of 2021, Lesley, John, and Devon Geyer filed petitions for protection from abuse against Appellant. Lesley and John are married, and Devon is their daughter. Appellant is the nephew of Lesley and John, and the cousin of Devon. All the parties live in residences in a community called Beech Mountain Lake.

In Lesley's PFA petition, she alleged that Appellant had sent her threatening text messages, posted threats to her on social media, and entered her and John's home in the middle of the night without their permission. **See** PFA Petition (1133 MDA 2021), 7/13/21, at 3. Lesley also claimed that Appellant had threatened that "there will be a 'Ruby Ridge Situation'[1] … if

_____

[1] Appellant states that Ruby Ridge is the "location of an incident in August 1992 in which Federal Bureau of Investigation (FBI) agents and U.S. marshals
*(Footnote Continued Next Page)*

- 2 -

anyone [came] near his property" and that Appellant "ha[d] an open case in Montgomery Co[unty, Pennsylvania] for terroristic threats and an arrest warrant [*sic*] in [Florida] [f]or assault[]." ***Id.*** Lesley also alleged that Appellant claimed "to have many weapons[.]" ***Id.*** at 5.

In John Geyer's PFA petition, he averred that Appellant had told other Beech Mountain Lake community members that he would "put an index lien on [John's] home" and that John "should invest in guns." ***See*** PFA Petition (1134 MDA 2021), 7/15/21, at 3. John also claimed that Appellant entered his and Lesley's home in the middle of the night without permission "in 2015[,]" and had threatened "others in [the] community with [a] 'Ruby Ridge' type action…." ***Id.*** at 4. Additionally, John alleged that Appellant had posted threats on social media stating that John should "get guns[,]" that Appellant claimed to "have many weapons" himself, and that Appellant has committed prior crimes such as terroristic threats and assault. ***Id.*** at 3, 5.

In Devon Geyer's PFA petition, she claimed that Appellant had "shown a pattern of threatening behavior," including "threaten[ing Devon] and [her] property." PFA Petition (1135 MDA 2021), 7/15/21, at 3. Devon further stated that Appellant "went on [her] property without her permission … and has claimed to have guns." ***Id.*** Devon asserted that Appellant "has a history

_____

engaged in an 11-day standoff with self-proclaimed white separatist Randy Weaver, his family, and a friend named Kevin Harris in an isolated cabin in Boundary [C]ounty, Idaho. Weaver's wife, Vicki, his 14-year-old son, Sammy, and U.S. Marshal William Degan were killed during the siege." Appellant's Brief at 17 n.1 (citing https://www.britannica.com/event/Ruby-Ridge).

of criminal behavior, assault, terroristic threats, and lewd conduct[,]" that "he appears to be increasingly unstable[,] and this is the most threatening [she had] seen him ever be." *Id.* Devon claimed she was "in fear for the safety of [herself], [her] family, [and her] neighbors." *Id.*

Temporary PFA orders were entered against Appellant in each of the three cases on July 15, 2021. A final PFA hearing was conducted on July 22, 2021. At the hearing, Lesley testified that Appellant has issues with drugs and alcohol, has "admitted to being an alcoholic[,]" and that he has a "history of an … emotional disorder[.]" N.T. Hearing, 7/22/21 at 13. Lesley stated that Appellant has been hospitalized at inpatient psychiatric facilities and drug rehabilitation centers. *Id.* at 13, 14. She testified that when Appellant drinks, he becomes aggressive and violent, and "[a]nyone that doesn't agree with him gets attacked." *Id.* at 14. She stated that those behaviors by Appellant put her in fear of imminent bodily injury. *Id.* Lesley also explained that in 2015, Appellant was "abusing drugs and drinking" and "broke into [her] house in the middle of the night." *Id.* She also testified that she was aware of criminal charges pending against Appellant in other counties. *Id.* at 16. On cross-examination, Lesley conceded that Appellant had not directly threatened to hurt her, hit her, or do any bodily injury to her, but she testified that he did state that he would "make [her] life miserable forever or make sure I don't live … in peace again[,]" which she felt was "threatening…." *Id.* at 20.

John Geyer testified that Appellant sent a letter to their community "indicating [John] should invest in guns and that he was threatening to be on

[John's] and [Devon's] property." *Id.* at 22. John claimed that, given his knowledge of Appellant's prior history of assaulting several individuals, he felt Appellant was threatening personal injury to him. *Id.* at 23, 25. John also stated that Appellant "said [John] should raise [his] fists and fight" on social media. *Id.* at 26.

Devon Geyer testified next. She stated that Appellant has a problem with drinking and, after she witnessed him visibly intoxicated and slurring his words, she stopped communicating with him. *Id.* at 28. However, Appellant subsequently sent her a text message saying that he was on her property. *Id.* at 29. Devon sent Appellant a message telling him to leave her property, which he did. *Id.* Devon testified that she has an imminent fear of bodily injury from Appellant when he is "using substances." *Id.* at 30.

Finally, Appellant took the stand at the hearing. He testified that the entire situation was simply a property dispute, and that he never made any direct threat of bodily harm to any of the petitioners. *Id.* at 38, 39.

At the close of the hearing, the court entered final PFA orders against Appellant for Lesley, John, and Devon. Appellant filed timely notices of appeal in each case, and he complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The court filed a Rule 1925(a) opinion on November 10, 2021. Herein, Appellant states two issues for our review:

> 1. Where all three [A]ppellees' testimony included admissions that they were not afraid of [Appellant] and that he did not threaten them with immediate serious bodily injury, was it error to enter

the July 22, 2021 [o]rders for [p]rotection from [a]buse against [Appellant]?

2. Did the trial court abuse its discretion when it entered the July 22, 2021 [o]rders when it applied an incorrect standard ("[p]erceived fear") to the evidence presented[,] as there was no reasonable fear of imminent serious bodily injury?

Appellant's Brief at 9.

Preliminarily, we recognize:

"Our standard of review for PFA orders is well settled. 'In the context of a PFA order, we review the trial court's legal conclusions for an error of law or abuse of discretion.'" ***Boykai v. Young***, 83 A.3d 1043, 1045 (Pa. Super. 2014) (quoting ***Stamus v. Dutcavich***, 938 A.2d 1098, 1100 (Pa. Super. 2007)).

"The PFA Act does not seek to determine criminal culpability. A petitioner is not required to establish abuse occurred beyond a reasonable doubt, but only to establish it by a preponderance of the evidence." ***K.B. v. Tinsley***, 208 A.3d 123, 128 (Pa. Super. 2019) (citation and brackets omitted). A "preponderance of the evidence standard is defined as the greater weight of the evidence, *i.e.*, [enough] to tip a scale slightly." ***Raker v. Raker***, 847 A.2d 720, 724 (Pa. Super. 2004).

> When a claim is presented on appeal that the evidence was not sufficient to support an order of protection from abuse, we review the evidence in the light most favorable to the petitioner and granting her the benefit of all reasonable inferences, determine whether the evidence was sufficient to sustain the trial court's conclusion by a preponderance of the evidence. This Court defers to the credibility determinations of the trial court as to witnesses who appeared before it.

***K.B.***, 208 A.3d at 128.

***E.K. v. J.R.A.***, 237 A.3d 509, 519 (Pa. Super. 2020).

The PFA Act provides, in pertinent part:

**(a) General rule.--**The following words and phrases when used in this chapter shall have the meanings given to them in this section unless the context clearly indicates otherwise:

**"Abuse."** The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:

\*\*\*

(2) Placing another in reasonable fear of imminent serious bodily injury.

\*\*\*

(5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury.

23 Pa.C.S. § 6102.

In the instant case, Appellant first contends that the trial court abused its discretion by entering the orders against him, as it "focused solely on 'perceived abuse' and the 'fear that may have been generated in [the] recipient of the communication'…." Appellant's Brief at 16-17. Appellant complains that the court essentially ignored the statutory requirements that petitioner's fear must be "reasonable" and "imminent." *Id.* at 17. According to Appellant, the fact that the petitioners chose to continuously "subject" themselves to his social media posts, which they perceived as threatening, does not demonstrate that their fear of Appellant was reasonable. He also argues that the petitioners' fear of him was not reasonable where each of them testified that they had not previously been afraid of Appellant and had interacted with him, despite knowing of his prior, allegedly violent criminal offenses. *Id.* Finally, he maintains that it was not reasonable for the petitioners to fear serious or bodily injury from his comments regarding Ruby

Ridge or that John should invest in guns, where he "did not make any direct statements that would place them in immediate fear." *Id.* at 18.

Regarding each petitioner specifically, Appellant first contends that Lesley offered "what could only be perceived as expert testimony regarding [Appellant's] emotional and psychological states, together with other hearsay evidence concerning in[-]patient treatment[,]" which should not have been considered by the court in entering the final PFA order. *Id.* at 18. He also stresses that Lesley admitted he never threatened to hurt her physically. Second, regarding John, Appellant similarly highlights that John admitted that Appellant never actually threatened to hit him or injure him physically. To the extent Appellant said that John should "invest in guns[,]" Appellant points out that this was not said to John directly but, instead, in a social media post that John was free to disregard. *Id.* at 19. Finally, in terms of Devon, Appellant contends that she bought property in the Beech Mountain Lake community where she knew he lived, and also spent time with him, thus undercutting her claims that she was afraid of him. *Id.* at 20.

In rejecting Appellant's sufficiency challenge, the trial court considered Appellant's prior crimes of terroristic threats and assaults, the "tense" and "anxious" demeanor of Lesley and John Geyer during their testimony at the hearing, and "[t]he impact of finding [Appellant] in [their] home in the middle of the night…." TCO at 5. The court found that Appellant's "belief that[,] absent a direct threat[,] a PFA may not issue … minimized the seriousness of

his actions[,]" and the court noted that Appellant "never denied any of Appellees' complaints." *Id.* Additionally,

> the [court] accepted as credible and persuasive … Appellees' testimony regarding their fear based upon Appellant['s] past behaviors, [and] his inappropriate verbal and text communications…. The court did not find Appellant to be credible except for his testimony concerning his dispute concerning land usage in the Beech Mountain Lake Association.

*Id.* at 5-6. Ultimately, the court found that Appellant's "history of physical assaults, threats, trespass, [and] drug and alcohol abuse would lead to a reasonable inference of poor impulse control on the part of Appellant…. The texts, trespass, and past history of violence did, in this court's view, place these petitioners in reasonable fear of imminent bodily injury." *Id.* at 6.

We discern no abuse of discretion in the court's decision. Appellant did not deny that he made repeated, threatening remarks about, and to, the petitioners, including that John should buy guns, that an incident similar to Ruby Ridge could occur, and that he would never let Lesley live in peace again. In addition, Appellant entered John and Lesley's home in the middle of the night and trespassed on Devon's property. Lesley and Devon also testified that Appellant has a drug and alcohol problem, and that he became violent and aggressive when he is intoxicated. Lesley testified that Appellant has emotional problems and had received in-patient, psychiatric treatment in the past.[2] All three petitioners testified that they were aware that Appellant had

---

[2] To the extent Appellant complains that Lesley was improperly offering expert testimony about his psychological state, he waived that claim by failing to object to her testimony at the PFA hearing.

committed prior crimes, including assault. Ultimately, the court credited the petitioners' testimony and found Appellant's testimony unbelievable, which was within its discretion to do. *See C.H.L. v. W.D.L.*, 214 A.3d 1272, 1276 (Pa. Super. 2019) ("[T]he credibility of witnesses and the weight to be accorded to their testimony is within the exclusive province of the trial court as the fact finder.") (citation omitted).

We do not assess Appellant's actions toward each petitioner in isolation. They were all members of the same family, they live in close proximity to one another and Appellant in the same community, and they were each clearly aware of Appellant's threats and conduct towards the others. For instance, while Appellant did not explicitly threaten Devon, she was obviously aware of the threats he made toward her father and mother, just as Lesley and John were aware that Appellant had trespassed on Devon's property. Therefore, we consider Appellant's conduct toward all three petitioners when assessing whether they, collectively, had reasonable fear of bodily injury. We also "view the evidence in the light most favorable to [the] petitioner and granting [the petitioner] the benefit of all reasonable inferences." *Id.* at 1277 (citation omitted).

Viewing the evidence in the light most favorable to the Geyers, we conclude that Appellant's repeated acts and course of conduct toward them, and the totality of information known by them about his prior violent crimes, mental health, and substance abuse issues, supports the court's finding that

the Geyers were placed in reasonable fear of bodily injury. *See* 23 Pa.C.S. § 6102(5). Thus, the final PFA orders are supported by sufficient evidence.

In Appellant's second issue, he argues that the court abused its discretion by "focus[ing] solely on 'perceived abuse' and the 'fear that may have been generated in [the] recipient of the communication' and not[ing] '[t]hat's one of the problems.'" Appellant's Brief at 20 (citing N.T. Hearing at 21). The comments by the court cited by Appellant came during the following testimony on cross-examination of Lesley Geyer:

> [Appellant's Counsel:] You would agree with me that in the text messages and everything that you provided, [Appellant did] not make any direct threats to cause any harm to you directly; correct?
>
> [Lesley Geyer:] To make my life miserable forever or make sure I don't live – I can't find the one that is a copy but it says[, "]I'll make sure you never live in peace again["] or something like that.
>
> [Appellant's Counsel:] You would agree that's not [a threat] to cause bodily injury to you?
>
> [Lesley Geyer:] I don't know what that means, but it's threatening to me, yes.
>
> [Appellant's Counsel:] I understand how you perceive it. But you would agree he didn't threaten to hurt you, hit you or do anything bodily injury wise; correct?
>
> [Lesley Geyer:] No, he did not.
>
> THE COURT: Just for the record, [Lesley is] not limited to testify specific[ally] to what's listed in the petition. Past instances of abuse, perceived abuse, which is relevant as to understanding of any fear that may have been generated in [the] recipient of the communications. This is broad. That's one of the problems.

N.T. Hearing at 20-21.

According to Appellant, the court applied an incorrect standard of proof in finding the evidence sufficient to enter the PFA orders against him. He argues:

> The standard written right into the statute is **reasonable fear**, not **perceived fear**. "[T]he court's objective is to determine whether the victim is in reasonable fear of imminent serious bodily injury…[.]" ***Raker v. Raker***, 847 A.2d 720, 725 (Pa. Super. [] 2004). The standard is not somehow getting inside someone's mind to see if they perceived abuse or experienced fear. That simply is not humanly possible and is not the standard.

Appellant's Brief at 20-21 (emphasis in original; brackets in original omitted).

Initially, Appellant has waived this issue for our review by not including it in his Rule 1925(b) statement. ***See*** Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."). The court's order directing Appellant to file a Rule 1925(b) statement explicitly notified him that "[a]ny issue not properly included in the Statement timely filed and serve[d] pursuant to this [o]rder and Pa.R.A.P. 1925(b) shall be deemed waived." Order, 11/10/21, at 2 (unnumbered; emphasis in original). ***See Greater Erie Indus. Development Corp. v. Presque Isle Downs, Inc.***, 88 A.3d 222, 225 (Pa. Super. 2014) (*en banc*) ("[I]n determining whether an appellant has waived his issues on appeal based on non-compliance with Pa.R.A.P. 1925, it is the trial court's order that triggers an appellant's obligation[.] ... [T]herefore, we look first to the language of that order.") (citations omitted). Because Appellant did not allege, in his Rule 1925(b) statement, that the court applied

an incorrect standard of proof in assessing whether the evidence was sufficient to issue the PFA orders, he has waived that claim for our review.

Nevertheless, even if not waived, we would reject Appellant's claim that the brief comment by the court demonstrates that it applied an incorrect standard of proof. As Appellant points out, in PFA cases, the court must "determine whether the victim **is in** reasonable fear of imminent serious bodily injury." Appellant's Brief at 20 (quoting **Raker**, 847 A.2d at 725) (emphasis added). The court's comments regarding the Geyers' 'perceived fear' shows that the court properly assessed whether Appellant's conduct actually placed the petitioners in fear. The court then considered whether that fear was reasonable, and concluded that it was. **See** TCO at 5 ("The texts, trespass, and past history of violence did, in this court's view, place these petitioners in reasonable fear of imminent bodily injury."). In light of this record, we would find meritless Appellant's claim that the court applied an incorrect standard of proof in assessing the evidence, even had he preserved this claim for our review.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/08/2022