J-A02002-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| S.P. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| C.G. | : | |
| | : | |
| Appellant | : | No. 753 WDA 2022 |

Appeal from the Order Entered May 26, 2022
In the Court of Common Pleas of Washington County Civil Division at
No(s):  No. 2022-3240

BEFORE:  BOWES, J., MURRAY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BOWES, J.:                    **FILED: FEBRUARY 28, 2023**

C.G. ("Father") appeals the order granting a final protection from abuse ("PFA") order in favor of S.P. ("Grandmother") on behalf of minors C.G. and K.G.  We affirm.

The trial court succinctly summarized the factual and procedural history as follows:

> On May 2, 2022, [Grandmother], mother-in-law of [Father] and maternal grandmother of the minor children, filed a petition for a PFA on behalf of minor children, C.G. ([born in January] 2005) an K.G. ([born in August] 2007) against [Father].  [Father] is the biological father of the minor children.  [Grandmother] averred in her petition that she exercised partial physical custody of C.G. and K.G. while [Father] exercised primary physical custody of the subjects.  [Grandmother] further averred that the children were subject to constant violence in the house and specified that [Father] had previously hit C.G., held C.G. on the ground and hit him with a shoe four times and would have K.G. put out her face

---

[*]  Retired Senior Judge assigned to the Superior Court.

and would smack her in the face harder if she attempted to put her hands up to protect herself. [Grandmother] averred in her petition that C.G. called the police on [Father] on April 30, 2022. After a review of the petition and an *ex parte* proceeding in which [Grandmother] and C.G. testified, this court entered a temporary PFA.

A hearing on [Grandmother's] petition for [PFA] was scheduled for May 11, 2022. However, on May 9, 2022, the parties agreed to continue the matter to May 25, 2022. After the hearing on May 25, 2022, in which the children, [Father,] and other witnesses testified, this court granted [Grandmother's] request for a final [PFA] for a period of three years.[1]

Trial Court Opinion, 7/19/22, at 1-2 (cleaned up).

Father timely appealed from the final PFA order, and both he and the trial court complied with Pa.R.A.P. 1925. Father raises the following issues for our review:

1. Do the actions of defendant Father, as a matter of law, rise to the level of abuse?

2. Is the testimony of the children wholly deserving of credibility, given the surrounding circumstances, as a matter of law and of common sense?

3. Is the penalty of a [three-]year PFA appropriate in this case?

Father's brief at 10.

"Our standard of review for PFA orders is well settled. 'In the context of a PFA order, we review the trial court's legal conclusions for an error of law or abuse of discretion.'" ***Boykai v. Young***, 83 A.3d 1043, 1045 (Pa.Super.

---

[1] The final order specified that "any future custody order shall supersede this Order." Final PFA Order, 5/25/22, at 2.

- 2 -

2014) (quoting *Stamus v. Dutcavich*, 938 A.2d 1098, 1100 (Pa.Super. 2007)).

First, Father alleges that Grandmother did not meet her burden in establishing the need for a final PFA order. "In reviewing the validity of a PFA order, we must determine whether the evidence, in the light most favorable to petitioner and granting her the benefit of all reasonable inferences, was sufficient to sustain the trial court's determination that abuse was shown by the preponderance of the evidence." *S.W. v. S.F.*, 196 A.3d 224, 228 (Pa.Super. 2018) (citation omitted). Assessing the "[c]redibility of witnesses and the weight [to] be accorded to their testimony is within the exclusive province of the trial court as the fact finder." *S.G. v. R.G.*, 233 A.3d 903, 907 (Pa.Supe. 2020). Accordingly, we defer to the lower court's determination of the credibility of witnesses where they are supported by the record. *See C.H.L. v. W.D.L.*, 214 A.3d 1272, 1276-77 (Pa.Super. 2019).

"The purpose of the PFA Act is to protect victims of domestic violence from those who perpetrate such abuse, with the primary goal of advance prevention of physical and sexual abuse." *Commonwealth v. Widmer*, 744 A.2d 745 (Pa. 2000). The PFA Act defines "abuse" as follows:

> The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:
>
> (1) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury, serious bodily injury, rape, involuntary deviate sexual intercourse, sexual assault,

statutory sexual assault, aggravated indecent assault, indecent assault or incest with or without a deadly weapon.

(2) Placing another in reasonable fear of imminent serious bodily injury.
(3) The infliction of false imprisonment pursuant to 18 Pa.C.S. § 2903 (relating to false imprisonment).

(4) Physically or sexually abusing minor children, including such terms as defined in Chapter 63 (relating to child protective services).

(5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury.
. . .

23 Pa.C.S. § 6102(a). Importantly, past acts are significant in determining the reasonableness of a PFA petitioner's fear. *E.K. v. J.R.A.*, 237 A.3d 509, 519 (Pa.Super. 2020).

In his first claim, Father alleges that the evidence of "abuse" was insufficient because the incidents of physical abuse that the children alleged were "within the appropriate bounds of parental correction." Father's brief at 40. Father points to the fact that "the school, the therapist, the doctor, [and] neighbors" did not report observing any injuries to C.G. or K.G as evidence supporting his position. *Id*. at 41.

Father did not preserve this issue for appellate review. The certified record reveals that, during the hearing on Grandmother's PFA petition, Father emphatically denied imposing any form of physical punishment for bad behavior and testified that he never physically struck C.G. or K.G. *See* N.T.

Hearing, 5/25/22, at 62 ("I would never hit my kids, Your Honor. I swear to God. I never would hit my kids, on my mother's life, and she just got rid of cancer, dude."). Therefore, as Grandmother accurately points out in her brief, Father cannot presently argue that he was justified in striking C.G. and K.G. for disciplinary reasons because that issue was never raised in the trial court. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); *see also* Grandmother's Brief at 20-21 (citing, *inter alia*, **Kelley v. Mueller**, 912 A.2d 202 (Pa. 2006) (holding issue relating to PFA proceedings was waived under Rule 302(a) because it was not preserved in the trial court)). Accordingly, Father's first claim fails.[2]

Next, Father challenges the weight of the evidence presented at the PFA hearing, arguing that the trial court abused its discretion when it found the children "wholly deserving of credibility." Father's brief at 41. Father contends that K.G. was "in tears" during her testimony because she was "ashamed about lying" and that C.G. had an "incentive to lie" because he had

---

[2] Even if Father had not waived this issue, his claim would not succeed, as we would affirm on the basis of the well-reasoned opinion of the Honorable Jesse Pettit. **See** Trial Court Opinion, 7/19/22, at 4-10 (paraphrasing the testimony of K.G. and C.G. describing multiple incidents of past physical abuse perpetrated by Father and expressing fear that Father would continue to assault them in the future, analyzing the evidence in accordance with controlling precedent, and finding that Father's actions rose to the level of abuse within the meaning of the PFA Act).

been "involved" with a fourteen-year-old girl. *Id*. at 42-43. The trial court

found Father's bare accusations unpersuasive, explaining:

> This court found the testimony of C.G. and K.G. to be credible and stated so, on the record, at the hearing. The minor children testified in detail and with great emotion. During cross-examination, in which defense counsel asked K.G. repeatedly how long she would need to stand before being smacked by [Father], K.G. began bawling to the point this court had to go off the record and allow the minor child to calm.
>
> [Father] argues that K.G. was "hushed" during her testimony because "she was concerned to get her story straight." This court disagrees with [Father's] position regarding K.G.'s demeanor and placed its reasoning on the record at the hearing when the issue was first raised by counsel for [Father].[3]

_____

[3] At the hearing, the trial court responded to defense counsel's claims that K.G. was feigning tears in order to garner unfair credibility as follows:

> I will say this again for the record. We are in a formal proceeding here. All right? We're in the Washington County Courthouse. These children are coming in, testifying before two attorneys. I have a court reporter sitting at the table capturing everything before a sitting Court of Common Pleas Judge. This isn't something that these children do on a daily basis. In fact, I would go as far as saying these children have probably never had this type of experience before in their lives.
>
> Secondly, in my experience in practicing law and/or sitting in this type of position for over the last [twenty] years, I know that people, adults, get nervous and act a little differently when they have to come into a courthouse and be sworn in under oath and have to be subject to questioning, whether it's direct examination or cross-examination in a formal proceeding. I think this is entirely natural.
>
> But for a [fourteen]-year-old child and/or a [seventeen]-year-old child to have to come in and testify as to how – what they testified about, knowing that they have a father sitting right through the doors on the other side, I can certainly, in my mind, understand

*(Footnote Continued Next Page)*

[Father] testified that he would never hit his kids despite having wanted to in the past. Further, [Father] testified that the children testified to abuse because "[Grandmother] is putting it into them." This court did not find the testimony of [Father] to be credible.

Trial Court Opinion, 7/19/22, at 11 (cleaned up and citations omitted).

Our review of the certified record supports the trial court's findings. Both children testified about specific instances of physical abuse they suffered from Father and expressed fear of further bodily injury from Father. *See* N.T., 5/25/22, at 13-19 (C.G. testifying that Father had repeatedly hit him with a shoe, broken yard stick, back scratcher, and bare hand and that he does not feel safe with Father); *id*. at 32-43 (K.G. testifying that Father would unpredictably slap her across the face and that she was afraid of him). Moreover, the court was under no obligation to accept Father's denials and his bald claim that the allegations were the result of Grandmother "feeding [C.G. and K.G.'s] minds nothing but hatred." N.T., 5/25/22, at 59; *see also S.G. v. R.G.*, *supra* at 907. Accordingly, we defer to the trial court's determinations regarding the credibility of witnesses at the hearing and find that Father's second issue merits no relief. *See* N.T., 5/25/22, at 74 ("I found the testimony of both of the children to be concerning and certainly understandable that they would be in fear for their safety based on what

---

why their behavior might be a little different than sitting in their house discussing some type of matter with an attorney.

N.T., 5/25/22, at 57-58.

they've testified to."); *see also Kaur v. Singh*, 259 A.3d 505, 509 (Pa. Super. 2021) (stating that, "this Court will defer to the credibility determinations of the trial court as to witnesses who appeared before it[, and it] is well-settled that the trier[-]of[-]fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence").

Father's final argument is that a three-year PFA is "too harsh," since it separates the family. Father's brief at 44. "Instead of wrenching [the children] out of their home, less drastic measures could have been taken." *Id*. at 43. However, a review of Father's appellate brief demonstrates that he failed to set forth an argument with citation to appropriate authorities in support of this issue. *See* Father's brief at 43-44. As such, Father waived it as a basis for relief. *See C.H.L. v. W.D.L.*, *supra* at 1276; *see also* Pa.R.A.P. 2119(a).

In any event, the trial court found Father's argument misplaced, explaining that:

> [Father] ignores that this court included language in the final order which allows any future custody order to supersede the PFA Order. This language was included so that [Father] would have the opportunity to seek some form of visitation and/or custody with C.G. and K.G., through custody proceedings, if such future contact is determined by the court to be in the best interests of the children.

Trial Court Opinion, 7/19/22, at 12 (cleaned up).

The PFA Act empowers the court to order a PFA "for a fixed period of time not to exceed three years" in order to "prospectively control and prevent domestic violence." 23 Pa.C.S. § 6108(d). After finding abuse occurred and that Father continued to pose a risk of harm to the children, the trial court properly entered a PFA order that fell within the statute's parameters. Thus, we find no abuse of discretion.[4]

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/28/2023

---

[4] Although we conclude that the trial court properly found that Father's conduct with respect to K.G. and C.G. rose to the statutory definitions of "abuse" in the PFA Act, our decision has no impact on the viability of potential custody proceedings. In contrast to PFA proceedings, custody proceedings are designed to award custody based on the best interests of a child following the court's broad consideration of sixteen statutorily prescribed factors, including evidence of past abuse. **See** 23 Pa.C.S. §5328(2) and (2.1); **see also E.K. v. J.R.A.**, 237 A.3d 509, 527 (Pa.Super. 2020) ("PFA matter, while interrelated to [a] custody matter, is a wholly separate matter on a wholly separate docket."). Thus, Father's arguments regarding the separation of the family would be better posed in a custody proceeding, which, as the PFA court explained, would supersede this PFA order. **See** N.T., 5/25/22, at 74; **see also** Final PFA Order, 5/25/22, at 2.