J-S01031-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| KYLEE ALEXIS MANNKE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHAIN DURAN CURRAN | : | |
| | : | |
| Appellant | : | No. 1386 MDA 2023 |

Appeal from the Order Entered September 6, 2023
In the Court of Common Pleas of Adams County
Civil Division at No(s): 2023-SU-0269

BEFORE: PANELLA, P.J.E., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.: **FILED: MAY 17, 2024**

Shain Duran Curran ("Father") appeals from a final order entered against him pursuant to the Protection from Abuse ("PFA") Act, *see* 23 Pa.C.S. §§ 6101-6122, based on a petition filed by Kylee Alexis Mannke ("Mother") on behalf of their minor child ("Child"). We affirm.

Briefly, Child, nine years old at the time, brought to Mother's attention three incidents that had occurred while Child was with Father. On one occasion, Child observed sex toys in the "shopping cart" of an online Amazon.com account that she shared with Father. At two other junctures, within five days of one another, Child observed Father, in the living room of his residence and with the television on, masturbating in front of her. Child confronted Father the first time she saw him engaging in this sexual activity,

_____

[*] Retired Senior Judge assigned to the Superior Court.

with Father telling Child that he would not do it again.

Based on what Child reported, Mother filed a PFA petition. Correspondingly, following an *ex parte* proceeding, the court entered a temporary PFA order. A final hearing on the petition occurred on September 6, 2023. On that date,

> the [c]ourt took testimony *in camera* with only [Child] and counsel for both parties present. All other parties were excused upon approval of counsel. At the time of the events relevant to the PFA, [Child] was nine years old and at the time of the final PFA hearing [Child] had turned ten years old. Before interviewing [Child] about the events leading to the PFA [petition] being filed, the [c]ourt held a preliminary discussion to determine [Child's] competency as a witness by asking her various questions testing her ability to recall specific details and facts, articulate her recollections fully in response to questions, and understand the importance of answering the [c]ourt's questions truthfully. At the end of this preliminary conversation, the [c]ourt found [Child] competent to testify in the matter as she met all the criteria for competency.
>
> Upon making the determination that [Child] would be a competent witness, the [c]ourt questioned her about events leading to the PFA [proceedings]. [Child] identified [Father] as her biological father and said that she had stayed at [Father's] residence on multiple occasions before the temporary PFA [order] had been entered, as her mother and father … [both] had shared custody of her. [Child] testified about an incident that had occurred several months before the hearing, when [Child] had been using an Amazon account that she routinely shared with [Father] and noticed that there were sex toys saved to the shopping cart associated with the shared account. [Child] had not added the items to the cart, and could clearly tell that they were "inappropriate for [her] age" and how they were meant to be used based on the titles of the listings and the accompanying product descriptions. [Child] confronted [Father] about the items she saw and later reported the incident to her mother. [Child] testified that [Father] had removed the sex toys from the Amazon cart.
>
> [Child] also testified about two incidents when [Father]

exposed himself in her presence. One such incident occurred about seven months before the hearing at [Father's] residence while he and [Child] were in the living room watching television. [Child] had been on a love seat when [Child] "looked over and [Father] was touching his private area" in her presence. When asked for details, [Child] further testified that she had heard a "wetness noise" coming from [Father's] direction that drew her attention, causing her to turn and see [Father] masturbating. The couches were roughly six or seven feet apart in the same room according to both [Child] and [Father]. [Child] further testified that she had been awake the whole evening and was shopping on Amazon on a tablet at the time of the incident. [Child] had been so disturbed by [Father's] conduct that she immediately left the room, but confronted [Father] about what she had seen the following morning. She testified that she told [Father] "you were touching your private area last night and I didn't like it so I need you to stop," to which [Father] responded that he would stop.

[Child] also stated that there was a second incident occurring just five days later while [Child] was still in [Father's] care for the week. In the second encounter, [Child] testified, both she and [Father] were in the living room watching television when [Child] witnessed [Father] masturbating in her presence on an air mattress on the floor of the living room while she was seated on the love seat just a few feet away. Specifically, [Child] told the [c]ourt that she saw [Father] "touching his private area" with his hand and "going. . . . up and down." Like the prior incident, [Child] was made so uncomfortable by what she saw that she got up and left the room, this time going to the kitchen before returning to her seat. [Child] also testified that she confronted [Father] about the conduct the next morning (like she had after the first incident), asking [Father] to stop, at which point [Father] denied that such conduct had occurred.

Trial Court Opinion, 10/27/23, at 1-4 (record citations omitted) (most alterations in original).

Father denied any involvement in the three abovementioned occurrences and provided alternative explanations for the Amazon and first masturbation incidents, but categorically refuted any of the facts underpinning

Child's recollection of him masturbating a second time. Ultimately, the court "found [Child's] testimony to be extremely credible and [Father's] testimony to be less than truthful and generally not very credible. The [c]ourt also observed that [Child] was genuinely disturbed by [Father's] conduct in her presence while she gave testimony *in camera*." *Id*., at 5 (record citations omitted). Thereafter, the court entered a final PFA order against Father, and Father timely appealed.

On appeal, Father presents one question for our review:

1. Did the lower court err or abuse its discretion in granting Mother's PFA petition when the award was against the sufficiency of the evidence presented?

*See* Father's Brief, at 8.[1]

Preliminarily, we note that "[o]ur standard of review for PFA orders is well settled. 'In the context of a PFA order, we review the trial court's legal conclusions for an error of law or abuse of discretion.'" *Boykai v. Young*, 83 A.3d 1043, 1045 (Pa. Super. 2014) (quoting *Stamus v. Dutcavich*, 938 A.2d 1098, 1100 (Pa. Super. 2007)).

"The PFA Act does not seek to determine criminal culpability. A petitioner is not required to establish abuse occurred beyond a reasonable doubt, but only to establish it by a preponderance of the evidence." *K.B. v. Tinsley*, 208 A.3d 123, 128 (Pa. Super. 2019) (citation and brackets omitted). A

_____

[1] Father does not contest the court's determination that Child was competent to testify in his appellate brief.

"preponderance of the evidence standard is defined as the greater weight of the evidence, i.e., [enough] to tip a scale slightly." **Raker v. Raker**, 847 A.2d 720, 724 (Pa. Super. 2004). For sufficiency claims:

> When a claim is presented on appeal that the evidence was not sufficient to support an order of protection from abuse, we review the evidence in the light most favorable to the petitioner and granting her the benefit of all reasonable inferences, determine whether the evidence was sufficient to sustain the trial court's conclusion by a preponderance of the evidence. This Court defers to the credibility determinations of the trial court as to witnesses who appeared before it.

**K.B.**, 208 A.3d at 128.

Here, the lower court found that Father had abused Child, "as defined in Chapter 63 (relating to child protective services)." 23 Pa.C.S. § 6102(a). Under Chapter 63, "child abuse" is defined, *inter alia*, as "intentionally, knowingly or recklessly … [c]ausing sexual abuse or exploitation of a child through any act or failure to act [or] [c]reating a likelihood of sexual abuse or exploitation of a child through any recent act or failure to act." **Id**., § 6303(b.1). In turn, "sexual abuse or exploitation" includes "[i]ndecent exposure as defined in 18 Pa.C.S. § 3127 (relating to indecent exposure)." **Id**., § 6102(a). Finally, "indecent exposure" is committed where a "person exposes his or her genitals in … any place where there are present other persons under circumstances in which he or she knows or should know that this conduct is likely to offend, affront or alarm." 18 Pa.C.S. § 3127(a). Under the Crimes Code, an individual acts "knowingly" "if the element involves the nature of his conduct or the attendant circumstances, he is aware that his

conduct is of that nature or that such circumstances exist[.]" 18 Pa.C.S. § 302(b)(2)(i).

The thrust of Father's argument is that, even accepting all of Child's testimony as true, him having committed the act of indecent exposure was not established by a preponderance of evidence. *See* Father's Brief, at 17. In particular, Father argues that there is no evidence of his knowledge of Child's presence when he was sexually touching himself. *See id*. However, Father also acknowledges the aftermath of the first masturbation incident where Child indicated that Father agreed to stop touching his genitals. *See id*., at 17. Notwithstanding that admission, Father avers that no evidence established his awareness of Child's presence and further argues that there is nothing to establish that he was looking at Child or awake while committing his masturbatory acts. *See id*. Instead, Father posits that he could have been asleep on both occasions or thought he was by himself in the living room. *See id*., at 19. Father then analogizes his actions to that of the scenario where a child walks into his or her parents' unlocked bedroom only to witness them engaging in sexual activity. *See id*., at 20 (stating that, under those circumstances, parents would not be prosecuted for indecent exposure for failing to lock their bedroom door).

Describing the first incident, while in the same room as Father, Child "heard … a wetness noise." N.T., 9/6/23, at 20. Child "looked over and [saw that Father] was touching his private area." *Id*. Child then "went back to [her]

room because [she] didn't want to see it." ***Id***. "The next morning, [Child] confronted [Father] about it. [Father] said he'd stop but then about five days later he did it again." ***Id***. On this occasion, Child "saw [Father's] private area and he was touching it … [with] [h]is hand." ***Id***., at 22. Father was "looking up at the ceiling" during the time he was masturbating. ***Id***. When Child saw Father engaging in this activity, the television was on, providing enough light for her to see him the entire time. ***See id***., at 23. Instead of refuting Child's version of events or clarifying what she had seen, Father's response after Child told him to stop "touching [his] private area" was, simply, "[o]kay." ***Id***.

The second time, which happened in the same room, Father "was on the floor … across from [Child]." ***Id***., at 21. This time, both the television and kitchen light were on. ***See id***., at 26. Child, again, saw Father "touching his private area." ***Id***. Specifically, Father was going "up and down" on his private. ***Id***., at 27. When confronted, instead of responding with "okay," Father "said he didn't do it." ***Id***., at 21.

Although Father denied masturbating in front of Child and provided an alternative explanation[2] as to the first incident that had been described by Child, ***see id***., at 39-41, the court found Father not credible. Conversely, the court found credibility in Child's version of events. We must give deference to these determinations. ***See K.B.***, 208 A.3d at 128.

_____

[2] Father framed the alternative explanation as one where Child saw Father innocently adjusting his shorts. ***See*** N.T., 9/6/23, at 40.

Accordingly, predicated on Child's testimony, we find no abuse of discretion or error of law in the court's determination, utilizing a preponderance of evidence standard, that Father sexually abused Child within the meaning of the PFA Act. As such, Father's sufficiency claim necessarily fails.

Even giving some latitude to Father regarding the first of two masturbation incidents, Child, after witnessing Father in a common area engaging in masturbation, explicitly told him to stop. Father did not protest when Child made this request. When he acted in the same or a similar manner five days later, going "up and down" with his hand in front of Child, it was clearly permissible for the lower court to find that Father, through the exposure of his genitals, was operating in a way that was "likely to offend, affront or alarm" Child. 18 Pa.C.S. § 3127(a).

Although Father argues, for sufficiency purposes, that evidence must be adduced demonstrating his line of sight and level of consciousness while masturbating, **see** Father's Brief, at 18, he has provided no authority to demonstrate the necessity of proof as to these specific "requirements." Rather, the offense of indecent exposure merely requires that an individual expose his genitals where others are present when he knows or should know that his conduct would likely offend, affront, or alarm another person. 18 Pa.C.S. §§ 302(b)(2)(i), 3127(a). At a minimum, given Child's explicit discussion with him five days prior, Father should have known on the second

occasion that he was exposing his genitals in a place where Child would likely be and that his conduct would be deemed offensive by Child. Therefore, in reviewing all of the evidence in the light most favorable to Mother, as petitioner, and granting her the benefit of all reasonable inferences, we conclude that the evidence was sufficient to sustain the trial court's determination that Father abused Child within the definition of the PFA Act.

In finding no merit to Father's sufficiency argument, we affirm the PFA final order.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 05/17/2024