2019 PA Super 156

| | | |
|---|---|---|
| H.M.H. ON BEHALF OF MINOR, L.M.H. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| D.J.G. | : | |
| | : | No. 980 WDA 2018 |
| APPEAL OF: H.M.H. | : | |

Appeal from the Order Entered June 8, 2018
In the Court of Common Pleas of Mercer County Civil Division at No(s):
2018-0175

BEFORE:  GANTMAN, P.J.E., SHOGAN, J., and MURRAY, J.

OPINION BY SHOGAN, J.:                                    FILED MAY 13, 2019

Appellant H.M.H. ("Mother") appeals from the order denying her petition for a final protection from abuse ("PFA") order, which she filed pursuant to the PFA Act, 23 Pa.C.S. §§ 6101-6122, on behalf of her thirteen-year-old daughter, L.M.H., against L.M.H.'s fifteen-year-old first cousin, D.J.G.[1]  Upon review, we vacate the order, reinstate the temporary PFA order, and remand for the trial court to conduct a final PFA hearing within ten days or as expeditiously as possible.

In her PFA petition, Mother averred that D.J.G. sexually assaulted L.M.H. on several occasions.  Petition, 1/19/18, at ¶ 11.  A court-appointed master

_____

[1]  L.M.H.'s father and D.J.G.'s mother are siblings.  N.T., 6/8/18, at 4.

conducted an ex parte hearing on January 19, 2018. Based on the master's recommendation, the trial court granted a temporary PFA order. Order, 1/19/18. The trial court scheduled a hearing for January 26, 2018, at which Mother, L.M.H., and Mother's counsel appeared. D.J.G. did not appear, allegedly because he was hospitalized for mental health reasons. N.T., 1/26/18, at 2. Therefore, the trial court continued the hearing to March 8, 2018, due to D.J.G.'s absence, the possibility of juvenile charges being filed against D.J.G., and the possibility of self-incrimination if D.J.G. were present. Id. at 4; Order, 1/26/18.

On March 8, 2018, Mother, L.M.H., and Mother's counsel appeared, and D.J.G. appeared pro se; neither D.J.G.'s parents nor a guardian appeared on his behalf. N.T., 3/8/18, at 2. The trial court continued the hearing to June 8, 2018, and it appointed a guardian ad litem ("GAL") for D.J.G. Id. at 5, 7; Orders, 3/8/18 and 3/9/18. See Varner v. Holley, 854 A.2d 520 (Pa. Super. 2004) (instructing that minor named as respondent in PFA action must be represented by a guardian).

At the June 8, 2018 hearing, Mother, L.M.H., Mother's counsel, and a colleague of D.J.G.'s GAL appeared; neither D.J.G. nor his parents appeared. N.T., 6/8/18, at 3, 10. Following a "best practices policy," the trial court requested an offer of proof from Mother's counsel regarding a prima facie case of abuse and standing. Id. at 4. After counsel outlined the averments of abuse and the relationship of L.M.H. and D.J.G., the trial court determined

- 2 -

that Mother failed to present a prima facie case of abuse and that the relationship of first cousins did not meet the definition of "family" in the PFA Act, 23 Pa.C.S. § 6201. Id. at 4–10. The trial court vacated the temporary PFA order and dismissed the petition without prejudice. Order, 6/8/18.

In denying a permanent PFA order, the trial court offered the following justifications: (1) L.M.H. and D.J.G. were first cousins who live a "considerable" distance from each other and seldom saw each other; (2) the parties were pre-teens and teenagers when the incidents occurred; (3) D.J.G. had been hospitalized for mental health issues; (4) D.J.G. was receiving family support services through his county CYS; (5) D.J.G. had not violated the temporary PFA order during its five-month existence; (6) the PFA Act "is the most abused law in the Commonwealth"; (7) "The courts are not a solution to every problem encountered by everybody"; (8) "it is within the trial court's power to employ a 'best practice' or to limit the scope of a familial relationship to some rational basis"; and (9) "the parties can go ahead and control the situation themselves." Trial Court Opinion, 10/11/18, at 15–17; N.T., 6/8/18, at 9–10.

Mother appealed and, along with the trial court, complied with Pa.R.A.P. 1925. D.J.G. did not file a responsive brief. Mother raises two issues:

I.     Did the trial court err when it denied [Mother] the opportunity to have a final hearing where she could present evidence on her [PFA] petition and then dismissed the action sua sponte after [D.J.G.] failed to appear?

      II.     Did the trial court err when it ruled that first cousins are not family as defined in the [PFA] statute?

Mother's Brief at 5 (full capitalization omitted) (emphasis supplied).

Mother first challenges the trial court's refusal to conduct a hearing before dismissing her petition for a final PFA. Mother's Brief at 15. According to Mother, she was entitled to a hearing pursuant to 23 Pa.C.S. § 6107. Id. at 17. We agree.

"In the context of a PFA order, we review the trial court's legal conclusions for an error of law or abuse of discretion." Boykai v. Young, 83 A.3d 1043, 1045 (Pa. Super. 2014) (citations omitted). Pursuant to the PFA Act, "[w]ithin ten business days of the filing of a petition under this chapter, a hearing shall be held before the court, at which the plaintiff must prove the allegation of abuse by a preponderance of the evidence." 23 Pa.C.S. § 6107. "In interpreting Section 6107, this Court has held that the word 'shall' in Section 6107(a) mandates that a final evidentiary hearing must be conducted within ten days." Lanza v. Simconis, 914 A.2d 902, 906 (Pa. Super. 2006) (citing Drew v. Drew, 870 A.2d 377 (Pa. Super. 2005), and Burke v. Bauman, 814 A.2d 206 (Pa. Super. 2002)). The Pennsylvania Legislature's use of the word "shall" requires that the court hold an evidentiary hearing where the plaintiff has the opportunity to appear, with counsel, to submit evidence, and present witnesses in support of the allegation of abuse. Drew, 870 A.2d at 378; Burke, 814 A.2d at 208.

Here, the trial court explained that it asked Mother for a proffer of evidence of abuse as part of a "best practices policy" in deciding whether to conduct a hearing. Trial Court Opinion, 10/11/18, at 8–9. According to the trial court, the "best practices policy":

> has been suggested [at various judicial conferences] as [an] alternative to having a minor child testify in open court or be interviewed by the court in camera. This is especially applicable when the minor is the sole witness to the complained of events. If the offer of proof fails to establish a prima facie case of "abuse," there is no need to proceed further, thus preventing any further distress or trauma to the minor by forcing him or her to testify. Conversely, if the offer of proof does establish a prima facie case, then the minor should testify, either in open court or in camera.

Id. at 5 n.4 (emphasis supplied). Finding that Mother did not present a prima facie case of abuse, the trial court did not conduct a hearing before vacating the temporary PFA and dismissing Mother's petition for a permanent PFA. N.T., 6/8/18, at 5–10.

Significantly, the trial court does not refer to the PFA Act requirement of an evidentiary hearing pursuant to 23 Pa.C.S. § 6107, and it presents no authority for its assertion that it was entitled to forego a hearing because Mother did not present a prima facie case of abuse. Trial Court Opinion, 10/11/18, at 7–11. More significantly, in its opinion to this Court, the trial court opined that Mother's "proffer did present a prima facie case of 'abuse,'" specifically, indecent assault, 18 Pa.C.S. § 3101. Id. at 11 (emphasis and

italics supplied).[2]  Assuming the "best practices policy" for protecting minor victims from testifying unnecessarily has merit—which issue is not before us—Mother's proffer of abuse and this Court's interpretation of the mandatory language of Section 6107 required the trial court to conduct a hearing.  Drew and Burke.  The failure to do so was error.

Next, Mother challenges the trial court's ruling that L.M.H. did not have standing to pursue a PFA against D.J.G. because L.M.H. and D.J.G. did not have the requisite relationship under the PFA Act.  Mother's Brief at 25.  According to Mother, the Pennsylvania General Assembly's use of narrow terms and familial limits in the Crimes Code and the Child Protective Services Act—and the lack of such terms and limits in the PFA Act—suggests that it

_____

[2]  The trial court opined:

> "[I]ndecent assault" only requires "indecent contact" which is defined as "any touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire in either person."  18 Pa.C.S.A. § 3101.
>
> *   *   *
>
> [Mother] proffered that about six months prior to filing her PFA Petition, over the July 4, 2017 weekend, [D.J.G.] "grabbed [L.M.H.'s] hand and put it on his penis."  Given that the parties were respectively 15 and 13 years old at the time of this occurrence, it should be easier for [Mother] to prove that this conduct by D.J.G. was for the purpose of "sexual gratification."

Trial Court Opinion, 10/11/18, at 11.

intended to include a broader scope of relationships under the PFA Act. Id. at 32. We agree.

The purpose of the PFA Act is to protect victims of domestic violence from those who perpetrate such abuse, with the primary goal of advance prevention of physical and sexual abuse. Lawrence v. Bordner, 907 A.2d 1109, 1112 (Pa. Super. 2006). To that end, the PFA Act provides the following definition of "family or household members":

> "Family or household members." Spouses or persons who have been spouses, persons living as spouses or who lived as spouses, parents and children, other persons related by consanguinity or affinity, current or formal sexual or intimate partners or person who share biological parenthood.

23 Pa.C.S. § 6102(a) (emphasis supplied). For parties to be related by consanguinity there must merely be a direct blood relationship. Slusser v. DeBoer, 985 A.2d 974 (Pa. Super. 2009). First cousins are within the fourth degree of consanguinity. Black's Law Dictionary at 344 (9th Ed. 2009) (citing, James Kent, 4 Commentaries on American Law 410-420 (11th ed. 1886)).

Here, the trial court acknowledged that it was narrowly interpreting the PFA Act by imposing a limit on the degree of consanguinity required to meet the definition of "family" because it was "unable to find any other Pennsylvania statute that is so broad and encompassing." Trial Court Opinion, 10/11/18, at 13. The trial court reasoned that, because the PFA Act fails to specify the degree of consanguinity that would limit a relative from being a party to a PFA action, "a relative could be any living blood relative or a relative related

through marriage. . . . Such an interpretation is unreasonable." Id. Comparing the PFA statute to the more narrow language regarding "incest" in the Crimes Code, 18 Pa.C.S. § 4302, and "perpetrator" in the Child Protective Services Act, 23 Pa.C.S. § 6303, the trial court concluded that first cousins "would not qualify as 'relatives' or 'family members.'" Id. at 14. Upon review, we conclude that the trial court erred.

Pursuant to the PFA Act, family includes "other persons related by consanguinity." 23 Pa.C.S. § 6102(a).[3] This statutory definition of family is broad, but unambiguous. Thus, no further analysis is warranted. See 1 Pa.C.S. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."); § 1921(c) (factors such as the statute's purpose may only be considered "[w]hen the words of the statute are not explicit").

The trial court acknowledged that L.M.H. and D.J.G. "are related by consanguinity, sharing the same grandparent, and they are first cousins—four degrees of consanguinity." Trial Court Opinion, 10/11/18, at 12. Given the plain language of Section 6102, L.M.H. had standing to pursue a PFA order against her first cousin. Furthermore, we disagree with the trial court's

_____

[3] We note that the pre-printed Petition for PFA form filed by Mother lists the same relationships identified in the Section 6102 definition of "family." Petition for PFA, 1/19/18, at ¶ 5. In identifying L.M.H.'s relationship to D.J.G., Mother checked the box for "family member related by blood (consanguinity) to Defendant." Id.

opinion that such a broad interpretation of Section 6102 is "unreasonable." Id. at 13. Contrary to the trial court's reasoning, the use of limiting language regarding relationships in the Pennsylvania Crimes Code and the Child Protective Services Act reasonably suggests that the General Assembly intended the definition of "family" in the PFA Act to cover a broad scope of relationships. The General Assembly could have included limiting language in the PFA Act as it did in the other statutes, but it did not. Thus, because the definition of "family" includes first cousins under the PFA, the trial court erred in ruling that L.M.H. and D.J.G. were not family.

In sum, the trial court erred in failing to conduct a hearing on Mother's petition for a permanent PFA order and in ruling that L.M.H. lacked standing. Thus, we vacate the trial court's order, reinstate the temporary PFA order, and remand for the trial court to conduct a final PFA hearing within ten days or as expeditiously as possible.

Order vacated. Case remanded for proceedings consistent with this Opinion. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/13/2019

- 9 -