J-S14031-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| SAMUEL BURKE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KAYLA KEMERER | : | |
| | : | |
| Appellant | : | No. 1517 WDA 2021 |

Appeal from the Order Entered November 22, 2021
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): FD-09-03483-008

BEFORE: McLAUGHLIN, J., McCAFFERY, J., and PELLEGRINI, J.*

MEMORANDUM BY PELLEGRINI, J.:                    **FILED: MAY 23, 2022**

Kayla Kemerer (Mother) appeals from a Final Protection from Abuse (PFA) order entered in the Court of Common Pleas of Allegheny County (trial court) pursuant to the petition filed by Samuel Burke (Father) on behalf of M.K. (Child; dob 10/08). Mother argues that the order violated her right to due process and that the evidence was insufficient. We vacate and remand for proceedings consistent with this decision.

We take the following factual background and procedural history from our independent review of the record and the trial court's January 31, 2022 opinion.

_____

* Retired Senior Judge assigned to the Superior Court.

**I.**

Mother and Father (Parents) were never married and Child is the only offspring they share. The custody action, active since 2012, has never been to trial, because the parties have reached consent over their various custody related motions. The Parents shared custody of Child from 2015 to 2019.

In July 2019, Mother brought Child to Father because her boyfriend, John McCluskey, had beaten her and was cruel to Child. Despite McCluskey's action, Mother returned to him. In response, Father filed an emergency motion for custody (Emergency Motion, 7/12/19, at 3-4) (pagination provided). Following argument, the trial court granted the emergency motion. The order, drafted by Mother's counsel, directed in pertinent part that McCluskey "shall not have contact with [Child]." The trial court added the language, "Mother is responsible to ensure no contact." (Order, 7/12/19, at 2) (pagination provided).

On December 5, 2019, Mother filed a motion seeking, *inter alia*, to lift the provision that prohibited McCluskey from having contact with Child. The court denied the motion and ordered that the hearing officer for the Parents' upcoming January 9, 2020 hearing on their respective custody motions was to address the issue of McCluskey. The January 9, 2020 hearing was continued by consent of the Parents and never took place.

On November 9, 2021, Father filed the subject PFA petition on behalf of Child. The petition alleged:

> [November 7, 2021] was [Mother's] weekend to have Child. … [McCluskey,] who has a court order prohibiting him from being around [Child] … was at [Mother]'s residence, and [he] and [Mother] were drinking during the day. [Child] was present.
>
> Around 8pm, [Child] described being in his room laying on his bed. He heard [Mother] make a really weird noise downstairs. He went downstairs and saw [McCluskey] choking [Mother]. He tried to help; he jumped on [McCluskey's] back and tried to stop him from choking [Mother]. [McCluskey] stopped choking her and threw him off his back by leaning forward and hitting [Child] against the wall, essentially throwing him/crushing him against the wall. [Child] fell down onto the floor. It knocked the wind out of him. When he came to, [Mother] had taken his phone from his room before tending to him. She then told [Child] to go to his room and if he mentioned what happened to anybody, she would kill his two leopard geckos. She also said if he opened his mouth she would "shut it for him." She shut him in his room. He formulated a plan for safety. He ended up climbing out the window and went to the police station. They called [Father] to pick [Child] up. He told the police that [Mother] and [McCluskey, who] wasn't allowed to be there were drunk fighting and he didn't want to live there anymore.

(Petition for PFA, 11/09/21, at 3).

The PFA petition requested a change to the custody arrangement and its notice alerted Mother that, if she failed to appear at the final PFA hearing, "the case may proceed against [her] and a FINAL order may be entered against [her] granting the relief requested in the petition. In particular, [she] may … lose [] important rights, including custody of your children. …" (***Id.*** at Notice Page) (emphasis in original); (***see also id.*** at 2). The cover page attached to the PFA petition identified November 22, 2021, as the date of the final hearing in bolded capital letters. (***Id.*** at Cover Page).

- 3 -

The temporary PFA order entered the same day: (1) notified Mother in bold print that a final PFA hearing would be held on November 22, 2021, at 9:00 A.M. and that violation of the temporary PFA order could result in a charge of Indirect Criminal Contempt (ICC); (2) granted Father temporary physical custody of Child pending the final PFA hearing; and (3) directed Mother that she was to have no contact with Child pending the final PFA hearing. (*See* Temporary PFA Order, 11/09/21, at 1-2) (pagination provided).

On November 12, 2021, Father filed a motion for ICC due to Mother's violation of the temporary PFA order by calling Child at school. The court scheduled an ICC hearing for November 17, 2021. On November 17, 2021, the court continued the ICC hearing and expressly notified Mother that the ICC motion would be heard at the final PFA hearing on November 22, 2021. (*See* Continuance Order, 11/17/21, at 1).

On November 22, 2021, Father and Child appeared for the ICC and final PFA hearing. Mother failed to appear. As a result, the trial court did not hold the hearing and no record was made. The court filed a final PFA order by default due to Mother's failure to appear despite having been served. (Final PFA Order, 11/22/21, at 2). The final PFA order: (1) granted Father temporary primary custody of Child; (2) granted Mother supervised visitation with Child at Child's discretion; and (3) prohibited McCluskey from being present at any visitation that may occur between Mother and Child. (*See id.* at 3). The final PFA order expires on November 9, 2024. (*See id.*).

On December 23, 2021, Mother filed a notice of appeal and an emergency motion for reconsideration in which she admitted receiving notice of the November 22, 2021 final PFA hearing. (*See* Emergency Motion for Reconsideration, 12/23,21, at ¶ 5). However, she requested that the court reconsider the final PFA order because her failure to appear was due to mental health conditions that caused her to confuse the dates.[1] (*See id.* at ¶ 9). The trial court denied the motion for reconsideration the same day. Mother timely filed a statement of errors complained of on appeal.[2] *See* Pa.R.A.P. 1925.

Mother raises three issues for our review, which we have reordered for ease of disposition: (1) Whether the trial court violated Mother's Fourteenth Amendment rights in terminating her shared physical custody without due process; (2) Whether the trial court erred in entering the final PFA order where the allegations of abuse were directed to a third party who lacked the requisite relation pursuant to 23 Pa.C.S. § 6102(a); and (3) Whether the trial court erred in entering the final PFA order where the allegations of abuse directed

---

[1] Specifically, Mother maintained that she suffers from Attention Deficit and Hyperactivity Disorder (ADHD), Bipolar 2 Depression and Generalized Anxiety Disorder (GAD) for which she is on prescribed medication. She attached copies of the prescription bottle labels to the motion. (*See* Emergency Motion for Reconsideration, at ¶ 6, Exhibit A).

[2] Mother filed her Rule 1925(b) statement pursuant to this Court's January 20, 2022 order that *sua sponte* placed this case on the Children's Fast Track due to the custody issue.

to Mother were insufficient to sustain a finding of abuse pursuant to 23 Pa.C.S. § 6102(a). (Mother's Brief, at 2-3).[3]

## II.

Mother maintains that the trial court violated her Fourteenth Amendment rights by entering the final PFA order terminating her custody rights in an "off-record proceeding and without due process."[4] (**See** Mother's Brief, at 12-15).[5]

---

[3] "Our standard of review for PFA orders is well settled. In the context of a PFA order, we review the trial court's legal conclusions for an error of law or abuse of discretion." **Boykai v. Young**, 83 A.3d 1043, 1045 (Pa. Super. 2014) (citation and internal quotation marks omitted).

[4] "A question regarding whether a due process violation occurred is a question of law for which the standard of review is *de novo* and the scope of review is plenary." **Commonwealth v. Tejada**, 161 A.3d 313, 317 (Pa. Super. 2017).

[5] "The purpose of the PFA Act is to protect victims of domestic violence from those who perpetrate such abuse, with the primary goal of advance prevention of physical and sexual abuse." **Buchhalter v. Buchhalter**, 959 A.2d 1260, 1262 (Pa. Super. Ct. 2008) (citation omitted). Section 6102(a) of the Protection from Abuse Act (PFA Act) defines "Abuse" in pertinent part, as:

> The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:
>
> (1) … [R]ecklessly causing bodily injury … with or without a deadly weapon.
>
> (2) Placing another in reasonable fear of imminent serious bodily injury.

23 Pa.C.S. § 6102(a)(1), (2).

- 6 -

The Due Process Clause of the Fourteenth Amendment provides that no state shall deprive any person of life, liberty or property, without due process of law. **See** U.S. Const. amend. XIV. It is well settled that "procedural due process requires, at its core, adequate notice, opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction over the case." **S.T. v. R.W.**, 192 A.3d 1155, 1161 (Pa.Super. 2018). In this case, it is undisputed that Mother received notice of the final PFA hearing at which she had the opportunity to defend herself. However, a final PFA is not permitted in an "off the record" proceeding.

Section 6107(a) of the PFA Act provides that, "[w]ithin ten business days of the filing of a petition under this chapter, **a hearing shall be held** before the court, **at which the plaintiff must prove the allegation of abuse by a preponderance of the evidence**.") (emphases added). 23 Pa.C.S. § 6107(a).[6] "The Pennsylvania Legislature's use of the word 'shall' requires that the court hold an evidentiary hearing where the plaintiff has the opportunity to appear, with counsel, to submit evidence, and present witnesses in support of the allegation of abuse." **H.M.H. on behalf of L.M.H. v. D.J.G.**, 210 A.3d 1045, 1048 (Pa. Super. 2019) (citation omitted).

> The Protection From Abuse Act is a vanguard measure dealing with the problems of wife and child abuse.... To institute an action, the plaintiff must file a petition with the court alleging abuse by the

---

[6] Section 6107(a) was ruled unconstitutional as applied to circumstances not relevant here. **See L.K. v. C.W.**, 240 A.3d 151 (Pa. Super. 2020).

defendant. If emergency relief is needed, the court may enter a temporary, *ex parte* order to protect the plaintiff or minor children from abuse. In any event, **a hearing must be held within ten days at which time plaintiff must prove the charges**.

***Heard v. Heard***, 614 A.2d 255, 257 (Pa. Super. 1992) (citation and emphasis omitted); ***see also H.M.H. on behalf of L.M.H. v. D.J.G.***, ***supra*** (vacating final PFA order denying petition on face of document without a hearing).

In this case, while Mother received notice of the final PFA hearing that advised her that failure to appear could result in the loss of custody, the trial court issued the final PFA order without conducting the statutorily required hearing at which Father was required to establish the petition's allegations by a preponderance of the evidence. Mother's failure to appear at the hearing did not excuse this mandatory requirement.

Accordingly, the trial court erred in entering a final PFA order without conducting a hearing at which Father proved the PFA petition's allegations by a preponderance of the evidence. ***See Boykai***, ***supra*** at 1045. Hence, we vacate the final PFA order, reinstate the temporary PFA order and remand for the court to conduct a final PFA hearing at which Father must prove the allegations of the PFA petition before the court can enter a final PFA order.[7]

---

[7] Based on our disposition, we decline to reach the rest of Mother's issues and arguments in support thereof.

Order vacated.  Case remanded.  Jurisdiction relinquished.

Judge McCaffery joins the memorandum.

Judge McLaughlin concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/23/2022