J-A23022-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JOSE V. ORTEGA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| OLGA L. HENRIQUEZ | : | No. 598 MDA 2024 |

Appeal from the Order Entered March 27, 2024
In the Court of Common Pleas of Schuylkill County Civil Division at
No(s):  A-62-2024

BEFORE:  BOWES, J., OLSON, J., and STABILE, J.

MEMORANDUM BY OLSON, J.:                    **FILED: DECEMBER 31, 2024**

Jose V. Ortega ("Father") appeals from the March 27, 2024 order entered in the Court of Common Pleas of Schuylkill County denying his petition for a Protection from Abuse ("PFA") order against his former girlfriend, Olga L. Henriquez ("Mother" and collectively with Father, "Parents").[1]  After careful review, we vacate and remand for a new proceeding consistent with this memorandum.

The certified record reveals the following relevant facts and procedural history.  Parents were in a relationship for approximately fourteen years and never married.  They resided together in Schuylkill County since 2020.

---

[1] Father's appeal was not initially designated as a Children's Fast Track case. By order filed on June 5, 2024, we directed the Prothonotary of this Court to add the Children's Fast Track designation and to send a copy of the order to the trial court.

Parents share three natural children, who were ages three, six, and twelve at the time of the subject proceeding.

On March 4, 2024, Father filed a *pro se* PFA petition, pursuant to 23 Pa.C.S.A. § 6106, against Mother on behalf of himself but not the children. *See* Father's PFA Petition, 3/4/2024, at ¶ 4. Father alleged that Mother bit his finger and hit him during an argument on March 2, 2024. *See id* at ¶ 8. In addition, Father alleged that Mother "pulled a little red knife on [him]" after physically assaulting him on February 6, 2024. *Id*. at ¶ 9. On March 2, 2024, Mother was arrested for simple assault as a result of the incident. *See* N.T., 3/27/2024, at 47.

The trial court issued a temporary PFA order on March 4, 2024, which evicted Mother from the parties' shared residence, awarded Father temporary physical custody of the parties' children, and restrained Mother from having any contact with Father except for text communication to arrange visitation with the children. Lastly, the temporary order scheduled an evidentiary hearing.

Since it is relevant to our disposition, we note that Parents' native language is Spanish. By order dated March 20, 2024, the trial court appointed L. Michael Zogby as "the official court interpreter" for the pending proceeding. *See* 42 Pa.C.S.A. § 4412.[2] The court held the PFA hearing on March 27, 2024,

---

[2] Section 4412 provides as follows:

*(Footnote Continued Next Page)*

during which Parents were each represented by counsel. Mr. Zogby appeared and informed the court at the outset of the proceeding that "[b]oth sides need [interpretation from Spanish to English and *vice versa*]," which the court acknowledged. N.T., 3/27/2024, at 3-4.

After Father was sworn in with the assistance of the interpreter, the trial court questioned him about his length of time in the United States and his understanding of the English language. ***See id.*** at 8. Father replied in English, "It will be eighteen years. . . I do understand a little." ***Id.*** During Father's direct examination, the court interrupted and questioned Father about his ability to speak English, and Father replied, "Not too much. Just a little bit. . . . My English is not too good." ***Id.*** at 14.

Nonetheless, during a portion of Father's direct examination, the court instructed Mr. Zogby to stop translating questions for Father. ***See id.*** at 14-15. Further, the court directed Father during a portion of his direct examination to answer only in English. ***See id.*** at 15. Father's counsel objected on the record and in open court, as follows:

> Your Honor, with all due respect, I would like to make an [objection] to this, that the petitioner is of limited English

_____

***(a) Appointment of certified interpreter.*** – Upon request or *sua sponte*, if the presiding judicial officer determines that a principal party in interest or witness has a limited ability to speak or understand English, then a certified interpreter shall be appointed, unless the certified interpreter is unavailable as provided in subsection (b).

42 Pa.C.S.A. § 4412(a).

proficiency and is not able to protect his legal rights by being forced to converse in English.

N.T., 3/27/2024, at 15. The trial court overruled the objection, stating "If I don't understand it, then we can have the interpreter state it." *Id.*

Upon review, Father was afforded no translation for three questions and the corresponding answers during his direct examination. *See id.* at 14-16. The court then permitted interpretation for questions only and required Father to give six additional answers in English. *See id.* Subsequently, the court reinstructed Mr. Zogby to "[i]nterpret for the guy" and allowed the remainder of Father's testimony to utilize the translation.[3] *Id.* at 16.

In addition, during Father's direct examination, the court directly admonished him and his counsel to present the case faster. *See id.* at 10, 11, 12-13, 18 ("Let's speed it up[;]" "Let's get to the point here[;]" "Let's get to [the] meat of this violation of this PFA[;]"[4] "Let's cut to the – let's get to this. I want to move it along[;]" "Let's move along.").

By order dated and entered on March 27, 2024, the court denied Father's PFA petition. Further, the court granted Mother temporary primary custody of the children pending a parallel custody proceeding.

_____

[3] Mother's counsel advised the court during the proceeding that Mother did not require the use of the interpreter for speaking English. *See* N.T., 3/27/2024, at 28.

[4] We note that the trial court incorrectly described the proceeding as a violation of a PFA hearing. Rather, it was an evidentiary hearing with respect to Father's PFA petition.

On April 25, 2024, Father, through counsel, filed a timely notice of appeal. The trial court entered an order on May 16, 2024, granting Father an extension to file his Rule 1925(b) statement until twenty-one days after the transcript was docketed. Father complied and filed a concise statement on May 31, 2024. The trial court filed its Rule 1925(a) opinion on June 7, 2024.

On appeal, Father raises the following issues for our review:

I. Did the [t]rial [c]ourt err as a matter of law or abuse its discretion when it failed to enter a [f]inal [PFA order] for [Father] where he established that [Mother] abused him by causing bodily injury and she admitted committing the act that caused the injury?

II. Did the [t]rial [c]ourt commit an error of law when it entered an order under the [PFA] case that awarded [Mother] primary physical custody of the parties' children after it denied [Father]'s [petition] for [a PFA order], when [Mother] had not filed a separate petition requesting relief under the Act?

III. Did the [t]rial [c]ourt deny [Father] a full and fair hearing when it directed the court-appointed Spanish-speaking interpreter to stop interpreting for [Father], insisted that [Father] testify in English and continually interrupted [Father]'s testimony with admonishments to hurry along?

Father's Brief at 4.

We review the PFA order for an abuse of discretion or error of law. *See*

***K.B. v. Tinsley***, 208 A.3d 123, 127 (Pa. Super. 2019) (citation omitted). An

abuse of discretion has been defined as follows:

Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where

- 5 -

the record shows that the action is a result of partiality, prejudice, bias or ill will.

***Custer v. Cochran***, 933 A.2d 1050, 1054 (Pa. Super. 2007) (*en banc*) (citations omitted).

In this case, Father's third issue is dispositive; thus, we need not review his first and second issues. Father argues that the trial court prejudiced him and denied him the right to be heard when it failed to permit translation of the questions and forced him to answer in English during his direct examination, after the court knew he was of limited English proficiency. ***See*** Father's Brief at 22-25. He further argues that the court's admonishments to move along impeded his ability to present his case. ***See id.*** We are constrained to agree.

The Judicial Code, 42 Pa.C.S.A. § 4401-4417, governs this matter. Specifically, Section 4401 provides:

> It is hereby declared to be the policy of this Commonwealth to secure the rights, constitutional or otherwise, of persons who because of a non-English speaking cultural background . . . are unable to understand or communicate adequately in the English language when they appear in court or are involved in judicial proceedings. It is the intent of this chapter to provide for the certification, appointment[,] and use of interpreters to secure the rights of persons with limited English proficiency . . . in all judicial proceedings.

42 Pa.C.S.A. § 4401. "Judicial proceedings are defined as **[a]ny action**, appeal or proceeding **in any court of this Commonwealth**." 42 Pa.C.S.A. § 4402 (emphasis added); ***see In the Int. of R.C.-G.***, 292 A.3d 582, 589 (Pa. Super. 2023) (concluding trial court in a juvenile proceeding abused its

discretion and committed prejudicial error by failing to provide the father with a suitable interpreter under 42 Pa.C.S.A. § 4401). In the context of a PFA proceeding, the trial court is required to "hold an evidentiary hearing where the plaintiff has the opportunity to appear, with counsel, to submit evidence, and present witnesses in support of the allegation of abuse." *H.M.H. ex rel. L.M.H. v. D.J.G.*, 210 A.3d 1045, 1048 (Pa. Super. 2019).

This Court has explained that while it is within the discretion of the trial court to "determine the factual question of whether an interpreter is needed; a trial court does not have discretion to decide whether a [litigant] who needs an interpreter has a legal entitlement to one." *In re Garcia*, 984 A.2d 506, 511 (Pa. Super. 2009) (citations omitted). Thus, where the court is put on notice that a litigant has difficulty understanding or speaking the English language, "it must make unmistakably clear to him that he has a right to have a competent translator assist him." *Id.*; *cf. Commonwealth v. Wallace*, 641 A.2d 321, 326-327 (Pa. 1994) (finding no abuse of discretion when the record revealed that trial court was not aware the litigant's hearing impairment affected his ability to comprehend the proceedings).

It is beyond cavil that a litigant's "[f]ull comprehension is critical in any legal proceeding." *Commonwealth v. Garcia*, 661 A.2d 1388, 1395 n.13 (Pa. Super. 1995), *citing Commonwealth v. Pana*, 364 A.2d 895, 898-899 (Pa. 1976) (trial court committed prejudicial error when it appointed an interpreter for a litigant but refused to allow the party to testify with use of

said interpreter).  This Court concluded in **Garcia**, *supra*, that it is not unreasonable for a litigant who has a non-English native language to utilize an interpreter during a trial to ensure his full understanding of all aspects of the proceeding, even if they "would not do so for ordinary conversational purposes." **Id.**

Instantly, the certified record reveals that the trial court was well aware of Father's limited proficiency of the English language and consequent need for translation.  In accordance with Section 4412, *supra*, the court appointed Mr. Zogby prior to the March 27, 2024 hearing.  **See** Order of Court, 3/20/2024.  Mr. Zogby advised the court at the beginning of the proceeding that both Father and Mother would require his interpretation, which the court recognized.  **See** N.T., 3/27/2024, at 3-4.

Before Father's direct examination commenced, the following exchange occurred between the court and Father, with translation by the interpreter:

Q: Now, how long have you been in the country?

A: It will be [eighteen] years.

Q: Eighteen years.  Okay.  So you're here [eighteen] years and you don't understand any English?

A: I do understand a little.

Q: Oh, a little.  You're here [eighteen] years.

N.T., 3/27/2024, at 8.

Further, after Father answered approximately twenty-seven questions on direct examination with the use of translation, the court inquired of him as follows, to which Father responded in English:

Q: [translated into Spanish] You can speak English, can't you?

A: No.

Q: [not translated into Spanish] You don't speak English?

A: Not too much. Just a little bit.

Q: [not translated into Spanish] Not too much. How about telling us in English. All right. Go ahead and tell us in English now, if you can answer the question in English.

A: My English is not too good.

Q: [not translated into Spanish] I think your English is pretty good. So just go ahead. You can interpret when I think it is necessary.

N.T., 3/27/2024, at 14-15.

Thereafter, the translation services were not provided to Father for three questions and their corresponding answers. *See id.* at 14-15. The court then directed Mr. Zogby to "[i]nterpret for him" but ordered Father to "give [his] answers in English." *Id.* at 15. Ultimately, Father was required to answer nine questions in English on direct examination. *See id.* at 14-16. In its Rule 1925(a) opinion, the trial court states that Father provided "minimal" testimony that was not translated. Trial Court Opinion, 6/7/2024, at 4. However, our review of the notes of testimony reveals that said direct examination questions were directly related to the two incidences which

- 9 -

formed the bases of Father's PFA petition, as set forth *supra*. **See** N.T., 3/27/2024, at 15-16.

We conclude that the trial court unjustifiably set aside the statutory protections and requirements for providing an interpreter for those with "a non-English speaking cultural background" who are "to understand or communicate adequately in the English language when they appear in court or are involved in judicial proceedings." 42 Pa.C.S.A. § 4401. Specifically, the court considered translation by an interpreter to be for its own understanding rather "to secure the rights, constitutional or otherwise," of Father during the PFA proceedings. **See id.**; **see also R.C.-G.**, 292 A.3d at 589-90; **H.M.H.**, 210 A.3d at 1048.

Based on the foregoing, we conclude that the court denied Father the ability to present his case and committed prejudicial error inasmuch as he was not provided the use of an interpreter. **See** 42 Pa.C.S.A. § 4401; **see also R.C.-G.**, 292 A.3d at 589-590; **H.M.H.**, 210 A.3d at 1048. Father's credibility was a "critical factor" in this case, and we conclude that deprivation of the services of the appointed interpreter impeded a thorough credibility assessment. **R.C.-G.**, 292 A.3d at 590; N.T., 3/27/2024, at 50 (the court found that credibility is "[c]lose here, but we are going to find for [M]other."). In addition, we conclude that the court abused its discretion in its frequent admonishment to Father during his direct examination to "move along." N.T., 3/27/2024, at 10, 11, 12-13, 18.

Thus, we vacate the March 27, 2024 order denying Father's PFA petition. We remand to the trial court to hold a new PFA hearing within 45 days, during which Father shall be entitled to present his case and be provided with translation services pursuant to 42 Pa.C.S.A. § 4401 and 4412 for the entirety of the proceedings.

Order vacated. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/31/2024