J-S07001-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COURTNEY MILLER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | No. 1555 MDA 2025 |
| ERIC MILLER | : | |

Appeal from the Order Entered October 9, 2025
In the Court of Common Pleas of Luzerne County
Civil Division at No(s):  202508359

BEFORE:  BOWES, J., OLSON, J., and BENDER, P.J.E.

MEMORANDUM BY BOWES, J.:　　　　　**FILED: APRIL 9, 2026**

Courtney Miller ("Mother") appeals *pro se* from the order that dismissed her petition for a final order pursuant to the Protection from Abuse ("PFA") Act against Eric Miller ("Father").  We affirm.

During the time of the proceedings at issue, Mother and Father were litigating a divorce action and the custody of their child P.M., who was born in March 2021.  The instant PFA proceedings are the third that Mother has initiated against Father.  In this petition, Mother alleged that on July 21, 2025, she received a call from CYS informing her that a mandated reporter had indicated that Father physically abused P.M. and left her home alone.  **See** PFA Petition, 7/23/25, at ¶ 11.  Mother further averred that she discovered in June 2025 that various electronic devices had been hacked, such as her internet router,  smartphone, smartwatch, and door camera.  **Id**. at ¶ 12.  The court granted a temporary order prohibiting Father from having any contact

with Mother or P.M., awarding physical custody to Mother pending the final hearing, and directing CYS to attend that hearing. **See** Temporary PFA Order, 7/23/25, at ¶¶ 1-3, 5, 7.

Mother thereafter filed a host of motions in these proceedings, including motions to change venue, to disqualify counsel, and for extraordinary relief in the form of vacating all prior orders due to fraud or misconduct of opposing counsel, her former counsel, the Luzerne County Children and Youth Services ("CYS"), and the Luzerne County District Attorney's Office ("DA").[1] She also unsuccessfully sought relief from our Supreme Court and filed a motion for a private criminal complaint with the Pennsylvania Office of the Attorney General implicating Father's counsel, CYS, and the DA.

The parties, Mother's parents, Mother's former counsel, and CYS representatives appeared for a hearing on October 1, 2025, at which the child custody matter was addressed first.[2] The trial court summarized the CYS evidence as follows:

> The agency representatives testified that the agency received two reports on July 16, 2025. One was a report of bodily injury and the other was serious physical neglect. The child was interviewed and did not disclose abuse or neglect.

---

[1] Absent from the docket of the instant proceedings is a motion to compel discovery, which Appellant claims she filed on August 4, 2025. **See** Appellant's brief at 5.

[2] Mother appeared *pro se*, but indicated that she was seeking counsel for both the custody and PFA matters. **See** N.T. Hearing, 10/1/25, at 24.

> The agency representatives also indicated two previous reports were received on June 16, 2025[,] and July 7, 2025, but these were invalidated.
>
> It should also be noted that a Child Advocacy Center interview was slated for the child but canceled because the child would not go into the room where the interview was to be conducted.

Trial Court Opinion, 12/15/25, at 2 (citations omitted).

At the conclusion of the hearing, the court noted that the PFA was still pending and entered an order the following day rescheduling it for October 9, 2025.[3]

Mother again appeared *pro se* at the final PFA hearing. She implored the court to help her seek free representation, as the domestic violence organization that purportedly agreed to do so was not returning her calls. **See** N.T. Hearing, 10/9/25, at 4. She also lamented that the psychiatrist appointed by the court to conduct an evaluation for the custody matter did not respond to her calls or emails. **Id**. After a brief exchange with Father's counsel concerning that custody issue, the court returned to the PFA and instructed Mother to present her case.

---

[3] Pertinent to an issue Mother argues in this Court, in discussing Mother's accusations against her former counsel, Father's counsel recounted a time when, after Mother had supposedly fired her counsel, she and her lawyer went to the office of Father's lawyer in connection with the divorce litigation to "sign the MSA and exchange of AR-15." N.T. Hearing, 10/1/25, at 28.

Mother indicated that it all began "with an air tag in [P.M's] stuffed animal."[4]  *Id*. at 8.  Father's counsel objected, arguing that had been litigated in the last PFA.  *Id*. at 8.  Mother responded that she raised it again because "nobody is addressing it."  *Id*.  Mother continued:

> So, this all started with an air tag in my iCloud.  I am not an expert.  I am simply writing the abnormalities and the issues that I have been experiencing since the very first PFA that I filed.
>
> Nobody is acting upon it.  That's why it's in front of the Attorney General.  This has been going on for months.  I'm now currently locked out of my health account portals.  I'm not an authorized user on my own cell phone device.  I have photos of all of that.
>
> My emails, finding fake emails in my name, I deactivated every email account that I had had.  I had to start fresh.
>
> I deactivated all social media.  I've gone completely dark.
>
> . . . .
>
> I asked [Father] about the air tags that -- the serial numbers were scrubbed off.  I have presented that to the court already, and I am just desperate for relief now.   Now, I'm finding remote viewing apps on [P.M.'s] tablet.
>
> My Alexa devices are showing that people were FaceTiming; and, again, **I am not saying this is** [**Father**], **I am not**.  I am begging for somebody to investigate it and tell me who it actually is.  I am not making an allegation.  I am simply stating what it is that is happening.

---

[4] The instant PFA petition cited as an incident of abuse prior to the July 2025 report concerning child's neglect, that Mother had placed the tag in the toy to locate it when it was lost.  She noted at the June 11, 2025 custody exchange that the animal was ripped open and the air tag battery was leaking.  *See* PFA Petition, 7/23/25, at ¶ 12.

When you're being locked out of medical records and law enforcement is telling you to make sure somebody doesn't have a POA over you, law enforcement is telling you to go elsewhere, it is beyond concerning. Like why, -- like, that is a little weird, right, for law enforcement to say maybe you should try this place, that place, this place.

Why aren't they doing anything, is beyond me. [Father's counsel] said last week, she's blaming both [Father] and [Mother's former counsel]. **It's not that I'm blaming either one of them**. It's that I'm saying this number belongs to this person. This number belongs to that person. Now, I need law enforcement to tie it together and find out the facts and what is going on.

*Id*. at 9-11 (cleaned up, emphases added). Mother offered additional testimony along these lines, but pointed to no exhibits to corroborate the allegations.[5] Nor did she or any other witness testify to the averments that Father had abused and neglected P.M.

Father moved to dismiss Mother's petition, arguing: "There is no evidence. It's all hearsay, speculation, conjecture." *Id*. at 18. The trial court granted the motion, agreeing that there was not enough to find that Mother met her burden of proof. *Id*. at 20. It then moved on to discuss the custody case. Mother did not object then, or at any point during the hearing, on the basis that she had an outstanding motion to compel discovery that required resolution prior to ruling on the PFA petition.

---

[5] The trial court admitted a packet of materials offered by Mother at the prior hearing, and the court's order scheduling the final PFA hearing indicated that it could be addressed at the next hearing if needed. *See* Order, 10/2/25. However, Mother did not cite the exhibit at the PFA hearing.

This timely appeal followed. The trial court ordered Mother to file a Pa.R.A.P. 1925(b) statement, and granted her request for an extension and to supplement it. Mother submitted a statement raising a host of errors with the court addressed in its Rule 1925(a) opinion.[6]

She presents this Court with the following questions:

I.    Whether the trial court violated [Mother]'s due process rights by dismissing the PFA petition for lack of evidence after refusing to rule on [Mother]'s pending motion's [*sic*] necessary to obtain the evidence and failing to acknowledge that local law enforcement felt there was enough evidence to seek warrants to conduct an investigation.

II.    Whether the trial court abused its discretion by deferring to an incomplete CYS investigation and failing to independently assess the safety of the minor child.

III.    Whether the trial court erred by failing to consider an on the record admission that [Father] transferred a firearm while subject to a PFA order.

IV.    Whether the trial court violated [Mother]'s due process rights by disregarding her attempt to have her motion to disqualify opposing counsel heard before proceeding on the merits, despite her explicit statements that she was unable to obtain counsel and her pleas for the court's assistance in securing *pro bono* representation.

Mother's brief at 3-4 (cleaned up).

_____

[6] We have not found the statement noted on the docket or contained in the certified record. There is a paper within the record indicating that a document had been removed, and the trial court, in addressing the matters raised in the statement it received, does not suggest that Mother failed to comply with its order. Rather, it acknowledges an inadvertent misstatement made in the order granting Mother's extension request. Accordingly, we shall proceed to address Mother's appellate issues rather than apply wholesale Rule 1925 waiver.

We begin with the applicable legal principles. It is well-settled that "the purpose of the PFA act is to protect victims of domestic violence from the perpetrators of that type of abuse and to prevent domestic violence from occurring." *Diaz v. Nabiyev*, 235 A.3d 1270, 1272 (Pa.Super. 2020) (cleaned up). To prevail, a PFA petitioner must prove by a preponderance of the evidence that abuse contemplated by the Act occurred. *See*, *e.g.*, *K.B. v. Tinsley*, 208 A.3d 123, 128 (Pa.Super. 2019) ("A petitioner is not required to establish abuse occurred beyond a reasonable doubt, but only to establish it by a preponderance of the evidence."). "We review the PFA order for an abuse of discretion or error of law." *Ortega v. Henriquez*, 331 A.3d 12, 15 (Pa.Super. 2025).

In her first and fourth issues, Mother complains that the trial court violated her due process rights by improperly refusing to rule on her motions to compel discover and to disqualify Father's counsel. No relief is due. For one thing, as we noted above, the docket reflects no motion to compel filed in this PFA action. While the docket and certified record do include her motion to disqualify, the trial court aptly recounts that Mother never mentioned any outstanding motion at the October 9, 2025 PFA hearing or objected to proceeding on the PFA in the absence of rulings upon them. *See* Trial Court Opinion, 12/15/25, at 4-5. Hence, the trial court did not make the purported refusals, and Mother waived her due process claims for appellate review. *See Morgan v. Morgan*, 117 A.3d 757, 762 (Pa.Super. 2015) (holding alleged

- 7 -

due process violation waived by failing to raise it  the trial court); Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").[7]

Mother next assails the trial court for relying upon CYS's determination that the abuse reports were unfounded instead of complying with its "independent, non-delegable duty to assess the safety and best interests of a child in PFA and custody matters."  Mother's brief at 16.  The trial court explained that it did not consider itself bound by CYS's findings.  Rather, it looked to Mother "to prove by legally competent evidence that she was entitled to protection under the PFA Act."  Trial Court Opinion, 12/15/25, at 5. However, Mother presented no evidence that Father committed any act of abuse against her or P.M.  *Id*. at 7.  Mother's testimony established only that she "was fearful someone had infiltrated her electronic devices and wanted help finding that person," and expressly disclaimed any accusation that Father was responsible for it.  *Id*. at 5.  Our review of the transcript of the October 9, 2025, PFA hearing confirms that the trial court did not abuse its discretion in holding that Mother failed to produce evidence to establish that Father perpetrated abuse upon Mother or P.M.  Therefore, Mother's second claim is meritless.

---

[7] Mother's contention in her stated question about law enforcement seeking warrants is not developed in the argument portion of her brief and, in any event, was likewise subject to Rule 302(a) waiver.

In her third issue, Mother asserts that the trial court abused its discretion in failing "to address an on the record admission of an AR[-]15 transfer" between Father and his attorney during the pendency of the PFA proceeding. *See* Mother's brief at 18. The trial court did not address this issue in its opinion, as it does not appear to be among the issues Mother raised in her Rule 1925(b) statement. Even if not subject to waiver on that basis, the record does not support Mother's representation of the supposed admission. As we noted above, at the October 1, 2025, hearing concerning the child custody matter, Father's counsel mentioned Father bringing an AR-15 into counsel's office when the parties signed documents related to the divorce property settlement. *See* N.T. Hearing, 10/1/25, at 28. There is no indication of the date of the exchange or evidence that Father was subject to a PFA order at that time. Hence, the issue merits no relief.

Next, Mother argues that the trial court abused its discretion in forcing her to proceed *pro se* rather than granting her a continuance to obtain counsel. *See* Mother's brief at 20. She acknowledges that she had no right to court-appointed counsel in this case. *Id*. *See also Weir v. Weir*, 631 A.2d 650, 657 (Pa.Super. 1993) (holding that there is no right to appointed counsel for indigent litigants in PFA proceedings). Moreover, our review of the certified record reveals no indication that Mother asked to continue the October 9, 2025, hearing in order to secure counsel. As mentioned above, she did bemoan both at that hearing and the October 1, 2025, custody hearing that

she has had difficulty securing counsel after having fired her prior lawyer. Yet Mother made no specific request for additional time to search or gave any indication that additional time would yield the desired outcome. As such, we cannot find that the trial court abused its discretion in moving forward with the proceeding rather than *sua sponte* ordering a continuance and assisting her in securing pro bono representation.

Finally, although not included in her statement of questions, Mother complains that the trial court's dismissal order incorrectly denotes that both parties were unrepresented at the hearing. ***See*** Mother's brief at 21. The trial court explained that this was a simple typographical error and suggests that it in no way prejudiced Mother. ***See*** Trial Court Opinion, 12/15/25, at 7. Mother contends that the statement is not a harmless mistake, but amounted to "a substantive error reflecting the [c]ourt's failure to recognize the prejudicial power imbalance during the proceedings," and that the "material factual inaccuracy demonstrates a lack of due consideration and is prejudicial on its face." Mother's brief at 21-22.

We perceive nothing in the certified record to substantiate Mother's suggestion that this was something more than a mere clerical error, and no indication that it is a manifestation of prejudice. The bottom line is that Mother had the burden to prove by a preponderance of competent evidence that Father perpetrated abuse upon her or P.M. The trial court acted well within its discretion in finding that Mother did not meet that burden.

Order affirmed.


Judgment Entered.


Benjamin D. Kohler, Esq.
Prothonotary


Date: 04/09/2026